21  161
127a 634

## JONES *vs.* THE EAST SOCIETY OF THE METHODIST EPISCOPAL CHURCH OF ROCHESTER.

In an action by the assignee of a demand assigned to him in trust for the benefit of creditors, to recover such demand, the assignor is a competent witness for the plaintiff.

The declarations or admissions of the owner of a chose in action are not admissible to affect the rights of one subsequently deriving title from him.

The assignor being himself a competent witness, and not a party, his declarations are mere *hearsay*, and upon that ground should never be allowed.

The principle, and the reason, of the rule, extend to the case of an assignment in trust for the benefit of creditors.

The admissions of the assignor are proper evidence, however, where there is a complete identity, and community, of interest between the assignor and the party—where the party merely represents the assignor, and the latter is the person for whose interest and benefit, primarily, the action is brought and carried on; in short, where the action is for his " immediate benefit," so that he is not competent as a witness.

D. being authorized by the trustees of a religious society to procure a loan for the corporation, borrowed $2000 of M. in October, 1842, which was secured by a bond to M. signed by D. and others, trustees of the society, and also by D.'s mortgage upon his farm. D. credited the corporation with the money and disbursed it for them, as agent, in erecting a church edifice; crediting himself with the sums respectively, as they were disbursed. His accounts were audited by a committee of the society, on the 3d of December, 1844. The debt was paid to M. the lender, on the 30th of September, 1846, by a foreclosure of the mortgage and sale of D.'s farm.

*Held* 1. That the law would presume that the society were the principal debtors, and that the mortgage given by D. was given as collateral security merely. And this being so, D. was surety of the society, and could have no right of action until he had paid the debt. That in receiving and disbursing the money for the society, after it was obtained, D. only acted as the agent of the society; and the auditing of his accounts as such agent did not in any respect change or affect his character as surety.

2. That an action brought within six years after the sale of D.'s farm on the mortgage foreclosure, to recover the amount so advanced by D. for the society, was brought in time.

3. That it was not a valid objection to the right of recovery, in such action, that D. had never paid the debt, inasmuch as the mortgage upon his farm was not foreclosed until after his right to the mortgaged premises had been sold upon a judgment and execution against him; it being sufficient that the debt was paid out of the fund which D. provided for its payment, and which he owned at the time he pledged the same for the benefit of the society.

APPEAL from a judgment entered upon the report of a referee. The action was brought to recover a demand claimed to be due from the defendants to one Nathaniel Draper, for money advanced, and services rendered, by him, for them. The defendants denied the allegations of the complaint, and set up the statute of limitations, and other defenses. The action was commenced on the 1st of May, 1851. Draper assigned his claim against the defendants, to the plaintiff, in trust for the benefit of creditors, on the 26th of April, 1851. The plaintiff gave evidence tending to prove his claims, but none of them were allowed, except the item under date of Sept. 29, 1846, "Paid J. McLean's bond and mortgage, first loan, $2464,33." That item will be explained by the following facts, which were found by the referee :

In the year 1842, the defendants commenced the erection of their church edifice on the corner of Maine and Clinton streets, in the city of Rochester. Nathaniel Draper was a member of the building committee and acted as its financial agent. On the 5th day of October, 1842, the defendants employed Mr. Draper to go to the city of New York, to procure a loan of $6000 or less, on the best possible terms, to forward the work of building the church edifice and to pay the debts then contracted. Mr. Draper accordingly went to the city of New York, where he borrowed of John McLean, $3000, ($1000 for himself and $2000 thereof for the defendants,) secured by a bond made by himself and by William Graves, Samuel Ellison, John Stroup, Hiram Davis and William G. Russell, who at that time were defendants' trustees. And also by Mr. Draper's mortgage upon his farm in Monroe county, bearing date October 8, 1842, acknowledged October 18th, and recorded October 19th, 1842, in the office of the clerk of Monroe county, which recites that he is indebted to the party of the second part, severally and jointly with William Graves, Samuel Ellison, John Stroup, Hiram Davis and William G. Russell, in the sum of $3000. On the 24th day of October, 1842, Mr. Draper credited the defendants in account the said $2000 and proceeded to disburse it for defendants' benefit as its financial agent.

On making disbursements, he charged them to the defendants in his account. On the 12th day of November, 1844, the defendants appointed a committee to audit the accounts of its agents, and report the cost of the church edifice and the amount of its debts. This committee examined and audited Mr. Draper's accounts as agent of the defendants, including the $2000 raised by the loan above mentioned and the items of charge for disbursements, and on the 3d day of December, 1844, made report of their doings, to the defendants, which was on the same day accepted by the defendants. This loan was never in fact paid, either by the defendants, Mr. Draper or any one else, otherwise than by the sale of Mr. Draper's farm on the 30th day of September, 1846, on the foreclosure of the mortgage to John McLean, and another mortgage to William McLean. On that sale the farm was bid off for $5500 by the latter, who from the proceeds of the sale paid and satisfied the full amount due on the bond and mortgage to John McLean, and after doing so had only a small surplus in his hands. The amount of the loan received by the defendants, with interest, remaining unpaid up to the time of the mortgage sale, and which was paid as aforesaid on that sale, was $2464.33. The mortgaged premises had been sold on the 22d day of September, 1845, at sheriff's sale, on a judgment subsequent to the mortgage to John McLean, in favor of Mary M. Castner, executrix, and Alfred Arnold, executor, of Samuel Castner deceased, against the said Nathaniel Draper. Within a week before the sale of the premises on the mortgage foreclosure, Mr. Draper agreed, by parol, with William McLean, that if he bid them off for enough to pay the judgment and the two mortgages, he would sell the premises to the judgment creditor. He did not bid enough for that purpose, but on the 30th day of September, 1846, after the sale on the mortgage foreclosure, he executed and delivered to Mary M. Castner, a deed of the premises sold upon the judgments and the mortgages, for the consideration of $5730. This deed is recorded in the same clerk's office, in liber 73 of deeds, at page 132. The mortgage to John McLean was in fact fully satisfied by the foreclosure and sale, and in no other way. There are various items of deb-

its and credits in Draper's account as the agent of the defendants, all of which bear date more than six years next before the commencement of this action, which was commenced May 1, 1851. The plaintiff is the assignee of the whole claim of Mr. Draper, and sues as such.

The defendants insisted that the entire claim was barred by the statute of limitations.

On the hearing, the plaintiff called Draper, the assignor, as a witness. He was objected to by the defendants as incompetent. The referee overruled the objection, and admitted his testimony; and the defendants excepted. The defendants offered to show that previous to the assignment of the demand Draper had stated that he had no claim against the defendants; and that the $2000 which he had borrowed in New York he had given to the defendants. This testimony was excluded, on objection by the plaintiff.

The referee's conclusions of law, upon the facts found by him, were, 1st. That the loan by Draper, to the amount of $2000, was for the benefit and as the agent of the defendants, at his request, and as between Draper and the defendants was the proper debt of the latter. Draper became the surety of the defendants for $2000 of that loan, and, as its surety, could not enforce the claim against the defendants until he paid it, or did, or suffered what is equivalent to payment. 2. Satisfaction and actual payment of the debt by sale of Draper's property operated as payment by him, and gave him a right of action against the defendants for moneys paid to its use at its request. 3. Draper's account with the defendants was not such a mutual account that the items within six years draw after it other separate and distinct items of older dates. 4. The account embracing Draper's claim for this $2000 and interest, has never been stated, as between Draper and the defendants. He has only rendered and had audited his account as agent, for services and disbursements on the one side, and his receipts on the other, with a view to ascertain and exhibit the pecuniary liabilities and standing of the defendants. This gave him no cause of action for the $2000 as upon an account stated. 5. The McLean mortgages being

prior to the judgment to Castner and the $2000 with interest, having in fact been paid and satisfied by the mortgage foreclosure and sale, it is immaterial whether the time for Draper to recover upon the sheriff's sale had or had not expired at the time of his agreement with William McLean, to sell to the judgment creditor, or whether that agreement was or was not void by the statute of frauds.  So far as the payment of the loan of $2000 is concerned, it is an executed agreement, and Draper had an interest to have the land applied as the primary fund to pay the debt, without resort to the bond.   6. His final conclusion of law, therefore, was that the plaintiff was entitled to recover in this action against the defendants, the amount due upon the $2000 loan, amounting at the time of the mortgage foreclosure and sale, on the 30th September, 1846, to $2464.33, with interest from that date to this.  He therefore found, determined and adjudged, that the plaintiff was entitled to recover against the defendants, of principal, the sum of $2464.33, with interest from September 30, 1846, in the whole amounting to the sum of $3874.87, besides costs.

From the judgment entered upon this report the defendants appealed.

*W. F. Cogswell,* for the appellants.   I. Draper, the assignor of the plaintiff, was the party for whose immediate benefit the suit was prosecuted, and should not have been admitted as a witness.   The authorities on this subject so far as known stand as follows : *Davies* v. *Cram,* (4 *Sandf.* 355 ;) *Allen* v. *Franklin Fire Ins. Co.,* (9 *How. Pr. R.* 501 ;) *Symonds* v. *Peck,* (10 *id.* 395,) hold that an assignor who has assigned his property for the benefit of his creditors is admissible as a witness, in an action brought by his assignee ; *Fitch* v. *Bates,* (11 *Barb.* 471,) and *Van Duzen* v. *Norvell,* (18 *id.* 409,) hold that he is not.

II. The declarations of Draper, during the time he was the owner of the demand, were admissible in evidence, and the referee erred in excluding the same.   (1.) Draper, if not the party for whose immediate benefit the suit was prosecuted, within the meaning of the code, was a party in interest as that term was

understood before the adoption of that statute ; and the admissions of a party in interest are evidence against the plaintiff. The admissions of the party really interested, although he be no party to the suit, are admissible in evidence against him ; for the law, with a view to evidence, regards the real parties. (*Stark. on Ev. vol. 2, p. 23.*) Admissions are evidence in favor of the other side, whether made by the real party to the record, or by the party who is really interested in the suit, though not named on the record. (1 *Phil. Ev.* 90, 2d ed. *by Cowen & Hill.*) In an action on a bond conditioned to pay money to L. D., the declarations of L. D. that the defendant owed him nothing, were held admissible. (1 *Wilson,* 257.) In an action brought against a sheriff for falsely returning an execution *nulla bona,* the defense was that the bankruptcy of the defendant overreached the levy made by virtue of the execution, and the chief question litigated was whether the petitioning creditor had a valid debt. The declarations of one of the assignees in bankruptcy, by whom the action was defended for the sheriff, were received to show that they had not. (6 *Esp.* 121.) So in an action brought by the person who effected a policy of insurance, the declarations of persons interested, not parties to the suit, were held admissible. (16 *East,* 143.) The doctrine of these cases is sanctioned by 4 *Wend.* 332. (2.) The declarations of a former owner of personal property, or thing in action, are admissible against the plaintiff, whenever the plaintiff does not claim as a purchaser for a valuable consideration, *but a community or identity of interests exists between him and such former owner, or when the plaintiff takes representatively.* That the declarations of a vender of personal property, or the assignor of a thing in action might be given in evidence against his vendee or assignor, was supposed to be law up to the time of the publication of Cowen & Hill's Notes, is shown by the learned commentators by note 481, especially at page 663, 2d ed. 1843, and also by 1 *Barb. Ch.* 105, 115. That the rule to the extent there contended for is in this state law, I am not obliged to insist : but I do insist that all the cases that have limited or restricted the rule have maintained the admissibility of the declarations

of an assignor, where there exists between the assignor and assignee a *community of interest, or the plaintiff takes representatively.* (11 *Georgia R.* 15. 11 *U. S. Dig.* 275.) Cowen & Hill's Notes, embracing this note in question, were first published in 1839. Between that time and the case of *Paige* v. *Cagwin,* (7 *Hill,* 361,) but two cases were decided upon the admissibility of the declarations of an assignor; *Beach* v. *Wise,* (1 *Hill,* 612,) and *Stark* v. *Boswell,* (6 *id.* 405,) both of which were cases where no community of interest existed. In *Paige* v. *Cagwin,* which was very elaborately argued, it was conceded by the eminent counsel for the defendant in error, that when this community of interest existed the declarations of the assignor must be given in evidence. In the very learned and elaborate opinion of Senator Lott, in that case, the doctrine that a community of interest or identity of interest authorizes the admission of such evidence is conceded, but he shows that the transferee of a note paying value for it, is not in community of interest with the transferor. The next case upon the admissibility of this evidence is *Brisbane* v. *Pratt,* (4 *Denio,* 63,) where the declarations of the transferor of a promissory note were held admissible against the transferee, who took it after due, who it was not *proved* paid value for it, upon the ground that there was a community of interest. Jewett, J., delivering the opinion of the court, says : " The rule is, that to render the declarations of a previous holder of a note admissible in behalf of the defendant, such holder must be identified in interest with the plaintiff. As the proof stood when the evidence was offered, the interest of Albert Brisbane was shown to be identical with that of the plaintiff, on the record. The rights and interest of the former in the note continued and were *represented* in this suit by the latter." To this he cites *Paige* v. *Cagwin.* This case was doubted by Welles, J., in *James* v. *Chalmers,* (2 *Selden,* 209,) but *this doctrine* was re-affirmed, as will be seen when that case is considered. In *Worrall* v. *Parmelee,* (1 *Comst.* 519,) the declarations of the former owner of personal property were held not admissible, to prove a sale of such property to the defendant claiming under him. The plaintiff showed himself a purchaser,

The opinion of the court was delivered by Jewett, J.   In *James* v. *Chalmers*, (2 *Selden*, 209,) the question came incidentally before the court.   The rule is again there re-affirmed, that if an identity or community of interest in the plaintiff and the payee, or former holder of a promissory note, were shown, the declarations of the former were admissible, the same as those of the plaintiff on the record.   In *Booth* v. *Swezey*, (4 *Selden*, 276,) the declarations of an assignor, prior to the assignment, were held inadmissible against the assignee of a mortgage, to show it usurious, but their admissibility when the plaintiff is merely his representative is affirmed.   The case of *Brown* v. *Miller*, (2 *Kernan*, 118,) shows that the learned judge who delivered the opinion thought that whenever a privity exists between the declarant and the plaintiff the declarations may be given in evidence.   It is true he dissents from the law as laid down in Greenleaf's Evidence, § 190, saying the cases in this state are the other way, and the question has been settled against the competency of such evidence, in the court of last resort; citing *Paige* v. *Cagwin*.   Now, so much of the doctrine of that section as holds that a purchaser of an over-due demand is within the rule for which I am contending, was overruled by *Paige* v. *Cagwin*, and the other branch of it, to wit : the admissibility of declarations against persons taking representatively is affirmed. by that case, and also by the reasoning of the learned judge in the case under consideration.   To return to the decisions of the supreme court.   In *Smith* v. *Webb*, (1 *Barb. S. C. R.* 231,) a general term decision of the third district, Parker, J., in speaking of *Paige* v. *Cagwin*, said : "It was there held that the declarations of a prior holder of a note, or vendor of a chattel, are not admissible against a subsequent purchaser who acquired title for a valuable consideration, and that such declarations are only admissible when made by a party really in interest, or by one through whom the plaintiff claimed by representation. The rule is only applicable when there is an identity of interest between the assignor and assignee," and the declarations were in that case excluded, because the "plaintiffs were purchasers in good faith for a valuable consideration."   The case of *Smith* v.

Jones *v.* East Society M. E. Church of Rochester.

*Schanck,* (18 *Barb.* 344,) also recognizes the same distinction. (*See also* 1 *Barb. Ch.* 105, 115, 263.) It would hardly be profitable to go through the decisions of the courts in the different states of the Union, because it will not be pretended that in any is the rule of exclusion as stringent as in this; and I believe in all the other states the declarations of an assignor of a chose in action, while he owned the same, are admissible against the assignee, unless such assignee can claim some superior right. It is so in Maine; (1 *Fairf.* 244, 9 *Greenl.* 83;) Massachusetts, (15 *Pick.* 92; 1 *Gray,* 550;) Mississippi, (12 *Smedes & Marsh,* 267;) Illinois, (3 *Gilman,* 281;) South Carolina, (2 *McCord,* 457; 2 *Rich,* 168;) North Carolina, (11 *Iredell,* 237;) Vermont, (15 *Verm.* 627;) Alabama, (8 *Ala.* 73;) Ohio, (*Wright,* 471;) Georgia, (8 *Georgia,* 201;) and I believe in every other state. (*See also* 1 *Greenl. Ev.* § 190; 3 *Bouvier's Inst.* 164.) In some of the earlier cases it is said that the reason why these declarations are admissible is that the declarant cannot be called as a witness; and sometimes when the declarations have been rejected, it is said the declarant might have been called; but that such is not the reason of the rule, is shown by the note of Cowen & Hill, (note 481,) and 1st Hill, 612. See also the opinion of Hopkins, in *Paige* v. *Cagwin.* Such a reason has not been assigned in any of the recent cases, as the ground of the decision. If this were the true reason of the rule, the declarations of the party on the record would *now* be rejected, since he may be compelled to testify. If it is necessary to cite authorities to show that such a community or identity of interest exists between Draper and the plaintiff, as is spoken of in the books, I refer to the admission of counsel, in *Paige* v. *Cagwin,* (8 *Hill,* 367;) to 22 *Pick.* 540, there referred to, 7 *Barb.* 467; *Burrill on Assignments,* 438–440, *and cases cited,* 10 *Paige,* 210. (3.) The admissions offered to be proved were competent as a part of the *res gestæ.* The witness had sworn that he had a conversation with Draper shortly after his return from New York in 1842, when Draper was superintending the building and providing the money to pay the hands, and was then asked, Did he say any thing to you at this time whether

the money he was providing to pay the hands was given by him to the church? This question the defendant was not allowed to ask. That this fell within the rule, see 1 *Greenl. Ev.* §§ 108, 113, 114.

III. The plaintiff's demand did not, nor did any part of it, accrue within six years next before the commencement of this suit. Before proceeding to the consideration of this point we will recur to the ground upon which the referee has put his decision. He finds that all of the plaintiff's demand is barred by the statute of limitations, except $2000 and interest, paid Sept. 29th, 1846. All the other questions he finds in the defendant's favor. The referee erred in holding as matter of law, that no cause of action accrued in favor of Draper, until he had paid this mortgage to McLean. He likens it in law to the relation of principal and surety; but no such relation existed, nor indeed could exist. The fundamental element of a principal debtor was wanting. (*Burge on Suretiship, pp.* 1, 3.) The defendant never was under any obligation to pay this debt, and the creditor McLean did not even know it in the transaction. He held the bond of Draper and others, and the defendant's liability, whatever it was, to Draper. There cannot be a surety where there is not a principal. It makes no difference that the defendant employed Draper to go to New York and borrow money. The question is, who was the defendant's creditor, Draper or McLean? It seems clear that it was the former. It is true that by resolution of October 5, 1842, Draper was employed to go to New York, to borrow money for the defendant; it is true that he went, and it is equally true that he did not accomplish his object. But finding that he could borrow money on his own credit, he borrowed several thousand dollars, a part of which he *appropriated,* to use his own word, for the benefit of the defendant. That is, not being able to borrow money for the church, he borrowed for himself, and loaned it to the church. There is nothing in the testimony which shows that this money was borrowed as the money of the church, and the referee erred in finding that it (the debt to McLean) was the debt of the church, as between the defendant and Draper. *It* was not the debt of

the church in any sense. It was Draper's debt. And the debt the church owed, if any, was to Draper. The liability of the church to Draper was independent of the source from which he received his money. The presenting of the account, including the money disbursed by Draper, borrowed of McLean, as a present indebtedness, and having the account duly audited and passed, is very cogent evidence that the above is the true exposition of the transaction. The account of Draper against the defendant, having been presented to the auditing committee, and by them audited, and they having made their report of the balance due him, and that report having been duly accepted, it must be regarded as an account stated, and it gave Draper a cause of action against the defendants, which they would be *estopped* to deny, and which cause of action accrued more than six years before the bringing of the present suit. (1 *Kern.* 170.) An account stated is conclusive upon the parties, unless impeached for *fraud* or *mistake.* (*Idem ;* 2 *Barb. S. C. R.* 586.) Here, neither the one or the other is pretended. Taking the most favorable view for the plaintiff, it amounted to this: A. borrows a sum of money from B., for and as agent of C., and which as between A. and C., the latter is to pay, but gives his own note for it. A. and C. afterwards, and before A. pays his note, have an accounting, in which C. is charged with this very money, and the account is settled and agreed upon by the parties. If this does not give A. an action against C., as upon an account stated, it would be difficult to conceive of a case that would. The presenting of the account and having it audited by the committee, and again by the trustees at a regular meeting, amounted to an agreement between the defendant and Draper, that the defendant should pay this debt to Draper as its creditor, leaving him to arrange with McLean as they could agree. (25 *Miss. R.* 267.)

IV. The action cannot be sustained; as Draper has never paid any money for the defendant, or done or suffered any thing that can be deemed equivalent to the payment of money. I am aware that when a surety pays the debt of his principal by transferring property, which is by consent of the parties received *as* money, he may treat it as money paid, &c. and recover in an

action of that kind; but there must be an *agreement* to receive the property as *money*, and it must be received in *pursuance* of the agreement. (8 *John.* 249, 202.  11 *id.* 518.  5 *Barb.* 398.  7 *Cowen*, 662.)

V. Draper never has paid this debt to McLean, in any way. After the McLean mortgage was given, Mary McCastner and another recovered a judgment against Draper, on which, on the 22d of September, 1845, the mortgaged premises were sold to the plaintiffs in that judgment.   On the 22d of September, 1846, the interest of Draper in the property became extinguished, and the property sold on the 30th of September, 1846, on the mortgage, was another's and not his.

*S. Mathews,* for the respondent.   I. Draper, the plaintiff's assignor, became the surety of the defendant for the loan of $2000 from John McLean, in October, 1842.   It was a debt of the defendant's, secured by the bond of Draper and others, and by Draper's mortgage upon his farm.   The payment of this sum by Draper to McLean, constituted, therefore, a valid demand against the defendant for the sum paid.

II. The satisfaction of the debt by a sale of the mortgaged premises was equivalent to payment by Draper in money.

III. The sale of the mortgaged premises on a judgment against Draper, did not affect the right of Draper to treat the satisfaction of the mortgage out of the sale of the mortgaged premises as a payment.   The purchaser at the sheriff's sale, purchased subject to the mortgage, and the mortgaged premises were the primary fund for the payment of the mortgage debt. (*McKinstry* v. *Curtis,* 10 *Paige,* 503.   *Heyer* v. *Pruyn,* 7 *id.* 465.)

IV. Draper's right of action against the defendant did not accrue until the payment of the debt, which was made on the 30th of September, 1846.   The statute of limitations did not therefore begin to run until that time.

V. There was no account stated between Draper and the defendant, upon which a suit might have been instituted.   (1.) The committee appointed by the society, under the resolution of the

12th November, 1844, to audit the accounts against the society, had no authority to *state* an account. The object of appointing that committee was to ascertain the aggregate indebtedness of the society ; and the auditing contemplated by that resolution, was simply an inquiry into the accuracy and amount of the several unliquidated claims. (2.) The debt for $2000 to John McLean, was claimed by Draper as a debt to *become due,* and for which he was liable.

VI. Draper was a competent witness. The only objection to his competency was that he was the party for whose immediate benefit the suit was prosecuted. The assignment to the plaintiff was made in trust for the payment of the debts of Draper. Draper says that the money collected in this suit, if the plaintiff was successful, was not to come to his hands. A recovery by the plaintiff, would provide a fund for the payment of Draper's debts, and to that extent Draper was interested in the recovery. This, however, under the code, did not render him incompetent. (*Montgomery Co. Bank* v. *Marsh,* 3 *Seld.* 481. *Davies* v. *Cram,* 4 *Sand. S. C. Rep.* 355. *Washington Bank* v. *Palmer,* 2 *id.* 686.)

VII. The declarations of Draper were not competent evidence to defeat a recovery. They were properly rejected by the referee. (*Stark* v. *Boswell,* 6 *Hill,* 405. *Paige* v. *Cagwin,* 7 *id.* 361.)

VIII. The proceedings of the several society meetings were properly received in evidence. If this evidence was material at all, it went to show a recognition of the defendant's liability for the debt, to McLean. But the testimony may be rejected without changing the result, and its reception is therefore no ground for a new trial.

*By the Court,* JOHNSON, J. The first objection raised by the appellant is, that Draper, the plaintiff's assignor, was improperly admitted to testify as a witness upon the trial. The decisions upon this question have been conflicting, but we are of opinion that he was a competent witness. The suit was not for his immediate benefit. It is true that a recovery would

add to a fund which the assignor had set apart and transferred to the plaintiff for the payment of the debts of the assignees. But he had no control over the fund after the assignment, and no claim to any portion of it, unless there should remain something after the debts were paid.

The action is for the more immediate benefit of the *cestuis que trust*. And yet I do not see how they could be excluded, since the decision of the court of appeals in *Montgomery Co. Bank* v. *Marsh*, (3 *Seld.* 481.) The assignor of a demand as a collateral security for the payment of his own debt, was always, prior to the code, a competent witness in an action by the assignee, upon the execution of a release. (*Artcher* v. *Zeh*, 5 *Hill*, 200.) The interest of an assignor in such an action is nearly, if not entirely, identical with that of the assignor in this. If before the code he would have been rendered competent by a release, he is now without it, by force of the statute.

The next question is, whether the declarations or admissions of the assignor, made before the assignment, should have been received as evidence upon the trial. They were offered by the defendant and excluded, and in this I think the referee was right. The rule here is well settled, that the declarations of the owner of a chose in action are not admissible to affect the rights of one subsequently deriving title from him. (*Paige* v. *Cagwin*, 7 *Hill*, 361. *Stark* v. *Boswell*, 6 *id.* 405. *Beach* v. *Wise*, 1 *id.* 612. *Whitaker* v. *Brown*, 8 *Wend.* 490. *Kent* v. *Walton*, 7 *id.* 256.) The rule is different in several of the sister states and perhaps in England. But the rule as established here, seems to me to rest upon the most solid foundations of reason, policy and justice. The assignor being himself a competent witness, and not a party, his declarations are mere hearsay, and upon that ground should never be allowed. Evidence of what a party has said, although competent from the necessity of the case, has always been justly regarded as the most uncertain and unreliable of all evidence, and it would be impossible to afford any reasonable protection to the rights of assignees if the mere hearsay of the assignor were allowed to have the force of admissions by a party to the action. I concede

that our courts have as yet gone no farther than to exclude the admissions or declarations of an assignor, where the assignee holds as purchaser, and the title of the former is extinguished. But the principle and the reason of the rule must extend to a case like this. It is clear, I think, that it would extend to the case of an assignment by way of collateral security. And I see no good reason why it should not to a case like this. In either case the title passes to the assignee for the immediate benefit of others, whose rights are entitled to protection, and the assignor has no interest remaining in the subject of the assignment, other than a residuary or defeasible one. It was conceded by the very learned and able counsel for the defendant in error, in *Paige* v. *Cagwin*, that the declarations of an assignor might be admitted when he was identified in interest with the party; when the party upon the record held in a representative character merely, between whom and the declarant there was a community of interest in the event of the suit. And this seems to have been conceded by Senator Lott, who delivered the very able opinion in the court of last resort in that case. I agree that where there is a complete identity and community of interest between the assignor and the party, where the party merely represents the assignor, and the latter is the person for whose interest and benefit, primarily, the action is brought and carried on, in short where the action is for his "immediate benefit," so that he is not competent as a witness, in all such cases his admissions are proper. But it does not follow, merely because a party holds and sues in a representative capacity, that the admissions of the assignor may be used as evidence. The true criterion must be, is the action for his immediate benefit, or is it for the more immediate benefit of others? This, I apprehend, will be found to be the only rule which will protect fully the rights of all parties, while it preserves that cardinal feature of the law of evidence, that the best evidence must always be given. The declarant should be substantially the party, as contradistinguished from one having an interest in the question or in the event of the action merely.

The next question is, was this demand barred by the stat-

ute of limitations ? The referee has found that the $2000 was borrowed for the defendants ; that $3000 was borrowed by Draper—$1000 for himself and the residue for the society. That this amount was secured by a bond to the lender, signed by said Draper and several others who were trustees of the society, and also by Draper's mortgage upon his farm in Monroe county. This was in October, 1842. Draper was authorized by the corporation to make the loan on the best terms he could. He immediately credited the defendants this $2000 and disbursed it for them, in the progress of the erection of their church, as agent, crediting himself with the sums respectively, as they were disbursed. His accounts were audited by a committee of the society, on the 3d of December, 1844. The debt was paid to the lender by a foreclosure, and sale of Draper's farm upon the mortgage, on the 30th of September, 1846. The referee having found that Draper was authorized to borrow money on the credit of the society, and that he did borrow this $2000 for them, which was secured in part by the bond of the trustees of the corporation, and that the money was credited to them and paid out in their business, as their funds, the law will presume that the defendants were the principal debtors, and that the mortgage given by Draper was given as collateral security merely. This being so, Draper was the surety of the defendants, and could have no right of action until he paid the debt. It is perfectly immaterial who received and disbursed this money for the defendants, after it was obtained. In that Draper was only acting as the defendant's agent, and the auditing of his accounts as such agent, did not in any respect change or affect his character as surety. The action was brought within six years after the foreclosure.

It is also contended, on behalf of the appellants, that Draper has never paid this debt, inasmuch as the mortgage upon the farm was not foreclosed until after his right and title to the premises mortgaged had been sold upon judgment and execution against him. The argument is, that at the time of the foreclosure Draper had no right or title to the premises, and that neither his property nor his money has been applied to

satisfy the debt. However specious this may seem, it is unsound. At the time of making the mortgage he was the owner, and then conveyed or pledged so much of his property to the defendants' creditors, for their benefit. The purchaser under this subsequent judgment and execution, took the premises, subject to the payment of this mortgage. And the premises in his hands became in equity the primary fund for the payment and satisfaction of their mortgage debt. It was the fund Draper had provided for its payment; so that the mortgage, and consequently the defendant's debt, was in fact paid with Draper's funds. It is quite immaterial how Draper has paid this, whether in property or money. It was a money debt, and whatever was taken in satisfaction of it, will be regarded as money, if that is material.

The points were all properly disposed of by the referee, and the judgment must be affirmed.

[MONROE GENERAL TERM, December 3, 1855. *Welles, Selden* and *Johnson,* Justices.]