PECK and others *vs.* CROUSE and others.

Declarations of the assignors of goods, made subsequent to the assignment, and after they have parted with the possession of the assigned property, are not competent evidence for parties sued by the assignees, for taking and selling the goods under and by virtue of a judgment and execution against the assignors.

Declarations or admissions respecting the assigned property, thus made, by the assignors, after they have ceased to have any control over the goods, are not a part of the *res gestæ*, but only mere hearsay, and therefore are not competent evidence against the assignees, or the creditors whom they represent.

Where the declarations or admissions relate to the intentions of the assignors—the secret operations of their minds—and not to any thing they said to the assignees, the fact that one of the assignees was present and heard the declarations or admissions without denying their truth, will not make them binding upon the assignees, or evidence against them.

What the assignors did, before they made the assignment, in contemplation of making it, is evidence upon the question of their intention in making it, proper for the consideration of the jury.

The rule is well settled, that where the validity of a sale or assignment of goods depends upon whether it was made with intent to hinder, delay or defraud creditors, the judge is bound to submit the case to the jury.

ACTION to recover the value of goods taken and converted by the defendants.

The plaintiffs claimed the goods by virtue of an assignment, dated the 14th day of June, 1861, made to them by Anson P. Campbell and Dayton Church, for the benefit of their creditors. Some creditors were preferred over others in the assignment. The defendants were judgment creditors of Campbell & Church, and took and sold the goods, by the sheriff of Broome county, by virtue of an execution issued upon their judgment against Campbell & Church. The defendants were not preferred in the assignment.

The action was tried at the Broome circuit in September, 1863. It was proved that Campbell & Church were merchants, at the date of the assignment, doing business in the town of Triangle, Broome county. The only questions, among those raised on the trial, now made, arose as follows: William E. Taylor, a witness for the defendants, testified

that he had an interview with Campbell & Church, at their store, within a week after the assignment was made, in the presence of the plaintiff Burghardt. He further said: "I asked Campbell & Church to show me a statement of their affairs; I am a merchant; I said to Mr. Church I thought they ought not to have made an assignment, from his statement, and he said he thought so too, but that Crouse was pressing them and trying to play sharp on them, and said he: 'Now damn them, I mean to keep them from getting their pay, if I can.' Nothing further said on the subject. This was in the hearing of Burghardt. He made some remarks, I don't remember what; Burghardt did not deny nor repudiate what was said; Mr. Campbell expressed the same idea at the time." The defendants asked to submit this evidence to the jury, and the plaintiffs objected, and asked the court to rule the same out, and the court decided that the evidence was incompetent to go to the jury, and excluded it. The defendants objected (says the case) to such decision.

Hiram Landers, a creditor of Campbell & Church, was sworn as a witness for the defendants, and they offered to prove by him that shortly after the assignment was made, Campbell & Church both stated to him that the only object in making the assignment was to defeat Crouse in getting his pay. This evidence was objected to by the plaintiffs, and the court sustained the objection, and the defendants objected to such decision.

Orrin B. Campbell, a witness for the defendants, testified, in substance, that the evening previous to the assignment, (which was made early in the morning,) he received goods from the store of Campbell & Church, by the hand of Anson P. Campbell, his brother, such as sugar, tea and nails, of the value of $130, in payment of a note for that sum he held against his brother Anson, who was one of the assignors. He also testified that he was a creditor of Campbell & Church and preferred in the assignment to the amount of $300. On his cross-examination he testified that the $130 note belonged

to him, and that the transaction, in receiving payment thereof, was honest.

Anson P. Campbell, one of the assignors, was examined as a witness for the defendants, and testified: "I was up all night drawing the assignment; Campbell & Church had $14 or $16, in money, on hand at the time of the assignment, which was not delivered over to the assignees; Church and I divided that between us the evening preceding the assignment; we took property out of the store the 12th day of June, 1861; we took thirty or forty pounds of sugar apiece, two or three pounds of tea apiece; about the same amount of coffee; a piece of sheeting divided between us, also part of a piece of bleached; we contemplated making the assignment at the time of taking the property; we had not been sued by any body previous to making the assignment; I had not taken an inventory of debts and credits; Church had, one or two months before, made a cast on it; I do not recollect just the amount; the horse and wagon and harness were not entered in the inventory that accompanied the assignment; we retained and used them up to the time of the levy; we have had them in our possession since the sale." Cross-examined: "George Adams bid off the horse and took it home, and since then some friend has bought the horse and left it with us to use; this horse, wagon and harness was partnership property; we claimed that it was exempt, and the assignees claimed it on the ground that it was partnership property; the assignees knew nothing about our having taken the things to the house; they did not know of our dividing the money; I think that was before they came to make the assignment; I think they did not know we had this money; I lived over the store; the firm rented the store—the whole building— one rent counted against the other; the rent of the store was paid out of the partnership business, and the arrangement was that the rent to Newell was to be paid by the firm." Re-examined: "I was engaged in no particular business after

the assignment, except such as we got; we kept the horse, buggy and harness and used it in our business, after the sale."

The evidence showed that the assignees took possession of the assigned property on the same day the assignment was executed, and that the assignment was duly executed, acknowledged, filed, recorded and accepted by the assignees; also that it was accompanied by the proper inventories of the debts owing by the assignors, and of the property assigned, appraisal, &c.

The plaintiffs commenced selling the goods as soon as the inventories were completed; and those in question were not taken by the defendants until nearly three months after the assignment was made.

The plaintiff Peck was a creditor of Campbell & Church, and the plaintiff Burghardt was holden for them. They were both preferred, as creditors, in the assignment.

After the evidence was closed, the court ruled and directed, in the hearing and presence of the jury, 1. That the evidence in relation to the payment, by goods, taken out of the assignor's store the night of the assignment, of a note to Orrin Campbell, was insufficient to set aside the assignment. To which ruling and decision the defendants excepted. 2. The court also held and decided that the evidence in relation to the taking and dividing of certain moneys and property out of the store, by Campbell & Church, and the retention of such property by them, was not sufficient evidence to set aside the assignment. To which ruling the defendants excepted. 3. The court ruled and decided that the [defendants] were not *bona fide* purchasers of the assigned property, and that it was not necessary, to invalidate the assignment, to show that the [defendants] received the property with a fraudulent intent. No exception was taken to this ruling, and it is palpable that the proposition is incorrectly printed. The word *"plaintiffs"* should be inserted where the word "defendants" is within brackets.

The judge further decided that he would leave the ques-

tion whether said assignment was fraudulent or not, to the jury. The defendants declining to go to the jury on that question, the cause was submitted to the jury under the charge of the court. The jury rendered a verdict in favor of the plaintiffs for $1733.16. Judgment was entered thereon, against the defendants, with costs, and they appealed therefrom to the general term of this court.

*Hotchkiss & Seymour*, for the plaintiffs.

*W. C. Ruger*, for the defendants.

*By the Court*, BALCOM, J. The points touching the validity of the assignment, made on the defendants' motion, for a nonsuit, have not been argued, or even presented, on the appeal here, and they need not be discussed. The case presents the question, whether declarations of the assignors of the goods, made subsequent to the assignment and after they had parted with the possession of the assigned property, were competent evidence for the defendants, when sued by the assignees, for taking and selling the goods under and by virtue of a judgment and execution against the assignors.

It was held, in Kentucky, in *Turpin's Administrators* v. *Marksberry*, (3 *J. J. Marsh.* 622,) that declarations or admissions of an assignor, after making the assignment, are not competent evidence against the assignee. And I believe the same rule has always been held in this state, except in cases where there was a common purpose shown in the assignor and assignee to defraud the creditors of the assignor. (*See Waterberry* v. *Sturtevant*, 18 *Wend.* 353; *Cuyler* v. *McCartney*, 33 *Barb.* 165; 21 *id.* 161.)

The declarations of the assignors, offered to be proved in this case, were not made until after the assignees had taken possession of the goods, under the assignment. The assignors then had no control of the goods; and they did not then have such an interest in the goods as entitled them to enter

into any negotiation, or make any declaration or admission, respecting the same, that could affect the rights of the assignees, or creditors for whose benefit the assignees held the goods. Whatever the assignors then said was not *res gestæ*, but mere heresay, and therefore not competent evidence against the plaintiffs. (21 *Barb.* 161. 33 *id.* 165.) In *Adams* v. *Davidson,* (6 *Selden,* 309,) the assignor was in possession of the assigned property at the time he made the declarations that were received as evidence against his assignee; which fact distinguishes that case from this.

The fact that one of the assignees, (the plaintiff Burghardt,) was present and probably heard the declarations or admissions of the assignors, made in their conversation with Taylor, without denying or repudiating what was said, does not make them binding upon the plaintiffs, or evidence against them. The declarations or admissions were in regard to the intentions of the assignors — the secret operations of their minds — and not in reference to any thing they had said to the plaintiffs. There can be no presumption that the plaintiffs knew whether the declarations or admissions were true or false. Burghardt, therefore, was not bound to contradict them, and his silence did not render them binding upon him, or evidence against him.

Again; it is very doubtful whether the assignors, in their conversation with Taylor, were not speaking of their intentions at the time the alleged admissions were made, and not as to what they were before or at the time the assignment was executed.

It is unnecessary to express an opinion on the question, whether any declarations of the assignors, before or at the time of making their assignment, were evidence against their assignee; for no such declarations were offered to be proved by the defendants. But on this question, see the following cases: *Paige* v. *Cagwin,* 7 *Hill,* 361; *Booth* v. *Swezey,* 4 *Selden,* 276; *Adams* v. *Davidson,* 6 *id.* 309; *Foster* v. *Beals,* 21 *N. Y. Rep.* 247; *Tousley* v. *Barry,* 16 *id.* 497;

*Requa* v. *Requa,* 22 *id.* 254; *Rathbun* v. *Platner,* 18 *Barb.* 272. The judgment in the last case was affirmed by the Court of Appeals, but the opinion of that court, in the case, has not been reported. (*See Griffin* v. *Marquardt,* 17 *N. Y. Rep.* 28.)

The true construction of the rulings made after the evidence was closed, is that the judge decided that certain evidence in the case did not, as matter of law, authorize a holding that the assignment was invalid. What the assignors did before they made the assignment, in contemplation of making it, was evidence upon the question of their intention in making it, proper for the consideration of the jury. But their acts were not of such a character as to render the assignment void as matter of law. (*See Wilson* v. *Forsyth,* 24 *Barb.* 105.) The rule is well settled, that where the validity of a sale or assignment of goods depends upon whether it was made with intent to hinder, delay or defraud creditors, the judge is bound to submit the case to the jury. (*See Vance* v. *Phillips,* 6 *Hill,* 433.) It is expressly provided by statute, that the intent in such cases "shall be deemed a question of fact and not of law." (2 *R. S.* 137, § 4.)

The judge decided that he would leave the question, whether the assignment was fraudulent or not, to the jury, and the defendants declined to go to the jury on that question. But the case was submitted to the jury, and as the charge is not set out in the bill of exceptions, the presumption is, it was satisfactory to the defendants. It does not appear that they excepted to any portion of it.

My conclusion is, that no error was committed on the trial prejudicial to the defendants, and that the judgment in the action should be affirmed, with costs.

So decided.

[BROOME GENERAL TERM, November 15, 1864. *Campbell, Parker, Mason* and *Balcom,* Justices.]