## COHEN et al. v. IRION.

*(Supreme Court, General Term, Fourth Department. September, 1889.)*

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—PREFERENCE OF FICTITIOUS CLAIMS.
    Where a firm was known to be insolvent by the partners, and one of them retired from it, selling his interest to the remaining partner for his notes for $2,500, which notes were afterwards preferred in an assignment by the remaining partner, the assignment is fraudulent.
2. SAME—PROOF OF FRAUDULENT INTENT.
    In an action to set aside an assignment, facts showing that assignor bought goods of plaintiffs with intent not to pay for them are admissible to prove the intent with which the assignment was made, even though judgments have been recovered for the price of the goods. MARTIN, J., dissenting.
3. SAME—FINDING OF REFEREE—REVIEW.
    A finding of a referee, from conflicting evidence, that an assignment is fraudulent, will not be disturbed on appeal.

Appeal from judgment on report of referee.

Action by Samuel H. Cohen and another against Elias Irion, assignee of George Beltz. Judgment was rendered for plaintiffs, and defendant appeals.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*S. M. Lindsley,* for appellant. *William Townsend,* for respondents.

HARDIN, P. J. Upon the evidence, the referee was warranted in finding that the firm of Beltz & Reusswig was insolvent at the time it was dissolved, March 1, 1880, and that the firm of Beltz & Reusswig owed from $4,000 to $5,000 more than its assets. Upon the dissolution of that firm, Beltz took the assets and "the whole business, and agreed to pay the firm debts." When Henry Beltz purchased an interest of his father in the property, he held a note given by the old firm of Beltz & Reusswig for $1,350, which he surrendered to his father as part of the purchase price for an undivided half interest in the firm assets. The verbal arrangement was made between the father and son for the partnership to exist between them, and after they entered into business a large number of the debts of the old firm of Beltz & Reusswig were paid. It is quite evident that when the son sold to the father, the 10th of June, 1884, his interest in the firm existing up to that time, the firm was in a state of insolvency, and that fact was known to the father and the son. Inasmuch as there was no value in the interest which the son held in the copartnership at that time, there was no good consideration for the notes, amounting to $2,500, which the father executed to the son. The evidence warrants the finding that the father and the son knew of the embarrassed and insolvent condition of the parties at that time. The father continued in business until the 21st of February, 1885, when he made a general assignment; preferring, among other debts, the two notes which he had given to his son, amounting to $2,500. He thus made an attempt to prefer a fictitious debt. The evidence supports the finding of the referee "that on June 10, 1884, the interest of Henry G. Beltz in Beltz & Son was of no pecuniary value, and that the notes given to him by his father for $1,250, and interest, each, and preferred in the assignment of February 21, 1885, were without consideration; and that George Beltz was insolvent at the time of giving said notes to his son." Bishop on Insolvent Debtors says, in section 232, p. 215, viz.: "An assignment by an insolvent debtor which undertakes to provide for the payment of debts not owing by the assignor, or for amounts in excess of sums justly due by him, is fraudulent and void, for the manifest reason that the provision for such fictitious debts must have the effect either to defraud the *bona fide* creditors of the assignor, or to delay and embarrass them in the collection of their debts;" and he cites numerous authorities upholding the proposition. See, also, *Mead* v. *Phillips,* 1 Sandf. Ch. 83; *Webb* v. *Daggett,* 2 Barb. 9; *Bank* v. *Webb,* 36 Barb. 291.

Whether the assignment was fraudulent in fact or not was a question of fact for the referee. In *Jacobs* v. *Remsen*, 36 N. Y. 669, it was said: "Whether an assignment made by an insolvent debtor, in trust for the benefit of his creditors, is fraudulent in fact, the finding of a referee or of a jury, upon conflicting evidence, that it is not fraudulent, cannot be legally disturbed by the supreme court." To the same effect in *Ball* v. *Loomis*, 29 N. Y. 412. Upon the question of whether the assignment was fraudulent in fact or not, the acts of the assignor prior to, and in contemplation of, making the assignment, bear upon the question of intent, (*Peck* v. *Crouse*, 46 Barb. 151;) and, when such an inquiry is opened, the law permits great latitude, (*Hubbard* v. *Briggs*, 31 N. Y. 538.)

It is insisted in behalf of the appellant that an error was committed upon the trial in allowing the complaint to be amended so as to allege large purchases by the assignor of the plaintiffs with the preconceived design not to pay for the same; and that an error was committed by the referee in receiving evidence, under such an amended complaint, of the facts tending to show that the assignor purchased between the 10th of June, 1884, and the 21st of February, 1885, when he assigned, a large quantity of goods, amounting to $10,-500, for which purchases the plaintiffs brought their actions, and recovered judgments; and in finding such facts in regard thereto as are stated in the sixth finding by the referee. While the plaintiffs were not in a situation to rely upon such fraud for the purpose of avoiding the assignment, (*Kennedy* v. *Thorp*, 51 N. Y. 174,) the acts and declarations of the assignor before and at the time of the assignment were legitimate facts upon the question of his intent in making the assignment, and giving the preferences therein mentioned, (*McEntee* v. *Steam-Boat Co.*, 45 N. Y. 35; *Peck* v. *Crouse*, 46 Barb. 151.)

Upon the whole evidence before the referee, he has found as a matter of fact that the general assignment executed by George Beltz, February 21, 1885, was "a part of a plan to hinder, delay, and defraud creditors of George Beltz, including the plaintiffs in this action, and to hinder, delay, and defraud them;" and thereafter he found as a conclusion of law that the assignment "referred to in the complaint herein was and is fraudulent and void against these plaintiffs, and should be set aside." We think the referee was authorized by the evidence before him to find as a matter of fact that the assignment was made with intent to hinder and delay creditors, and was fraudulent and void. We think his conclusion of law upon the facts found is correct. Judgment affirmed, with costs.

MERWIN, J., concurs.

MARTIN, J., (*dissenting.*) This action was in the nature of a creditors' bill, brought to set aside a general assignment for the benefit of creditors, made by the defendant George Beltz to the defendant Elias Irion. The action was based on the ground that such assignment was fraudulent as to creditors. The plaintiffs' allegations of fraud were that, by such assignment, certain fictitious debts were preferred; that the defendant Beltz secretly withdrew large portions of his assets, diverted them from the payment of his just debts, placed them beyond the reach of his creditors, without any valid consideration, and transferred a large portion of his assets to his son and relatives for his own use and benefit; and that he purchased large quantities of goods with an intent to cheat and defraud his creditors, with a view of including them in his assignment for the purpose of paying fraudulent creditors, and making fraudulent preferences under such assignment. The learned referee found that the assignment was fraudulent, and should be set aside.

The important question in this case is whether the evidence was sufficient to sustain the finding of the referee upon that question. The evidence shows that in 1866 the defendant George Beltz and one Reusswig formed a copart-

nership for the purpose of carrying on the business of merchant tailors at the city of Utica; that this business was continued by them until 1880, when that firm was dissolved, and the defendant Beltz purchased the interest of his partner in the business, and agreed to pay the debts of the firm. The debts of that firm were in excess of its assets. The defendant Beltz assumed the debts of the firm, as he testified, to preserve his good name, and because he wanted to continue the business, and keep his credit good. Upon making this purchase he at once commenced paying the debts of that firm, borrowing the money of his friends for that purpose, and using some of the funds of the firm of George Beltz & Son. All the debts of that firm were paid. After the dissolution of the firm of Beltz & Reusswig, the defendant Beltz and his son Henry G. Beltz formed a copartnership for the purpose of carrying on the same business. Henry purchased a one-half interest in the stock, fixtures, accounts, and business which had become the property of his father, but did not assume or in any way become liable to pay the debts of the firm of Beltz & Reusswig. He paid for such interest the sum of $2,150. This was paid by the surrender of a note of $1,000, and interest, amounting to $1,350, that he held against the firm of Beltz & Reusswig, which his father had agreed to pay, and a debt of $800 that his father owed him. The business was continued by George and Henry G. Beltz under the firm name of George Beltz & Son until January 10, 1884, when a disagreement arose between them as to the amount drawn out by the father, and as to employing a book-keeper, when, for that reason, the firm was dissolved. The father purchased the interest of his son for $2,500, and gave his notes therefor, which were preferred in his assignment. At that time Henry's interest in the firm exceeded the amount of such notes. The business was then continued by the defendant Beltz alone until February 21, 1885. During this time the defendant Beltz employed his son, who was a cutter, and who did the cutting for his father, and traveled some from place to place, taking measurements and orders for clothes. During the latter part of the time the business was carried on by George Beltz & Son, and after the son had sold his interest in the business to his father they purchased more goods for the business than they had previously. This was explained as being necessary to carry into execution their purpose to extend the business by taking orders in towns outside of the city where they were doing business. This explanation was in no way contradicted. On February 21, 1885, the defendant Beltz made a general assignment to the other defendant, and, among other claims, preferred the $2,500 in notes given his son for his interest in the business of George Beltz & Son. Upon making such assignment the defendant Beltz delivered to his assignee all the property in his possession, even to his watch. The assignee took possession of the same, and has since then duly proceeded with the administration of his trust.

Upon these facts it is difficult for me to discover any ground upon which this judgment can be upheld. I have been unable to find any evidence which would sustain the claim that the defendant Beltz has preferred any fictitious debt. The only pretense that this allegation in the complaint has been proved is based on the claim that the debt of Henry Beltz was fictitious because the firm of Beltz & Reusswig were insolvent; and that when he purchased of his father a half interest in the stock, fixtures, accounts, and business which had formerly belonged to that firm, he acquired nothing by such purchase, and, consequently, had nothing which he could transfer to his father for the notes which were preferred. I cannot assent to this proposition, either as one of fact or law. The undisputed proof is that, after the father had purchased the interest of his partner in the business and assets of the firm of Beltz & Reusswig, he sold to his son a half interest in the stock, fixtures, accounts, and business, for which he surrendered to his father a note for $1,000 and interest, and canceled a debt of $800. That these debts were owing by

the father to the son is undisputed. The son assumed none of the debts of Beltz & Reusswig. There is no evidence that this sale was not made in good faith; hence I am of the opinion that the son obtained a good and valid title to one-half of the stock, fixtures, accounts, and business then owned by his father, and which was formerly owned by the firm of Beltz & Reusswig. Assuming, then, that the son was the owner of a one-half interest in the business and assets, and as the proof shows that the firm of G. Beltz & Son was not insolvent, but that his interest at the time he sold it to his father was greater than the amount he received, it is impossible for me to see how it can be properly claimed that this debt to the son was fictitious. I do not think the judgment can be upheld on that ground.

I have found no evidence that would justify a finding that the defendant Beltz at any time secretly withdrew any portion of his assets, and placed them beyond the reach of his creditors, without valid consideration. Indeed, there seems to be no claim at this time that that allegation in the complaint has been established, unless as to the debt of the son, which has already been considered. Nor do I think the evidence sufficient to sustain the judgment on the ground that the defendant Beltz fraudulently purchased goods with the intent of including them in his assignment, to pay debts fraudulently preferred. The purpose of making the increased purchase was fully explained, both by the defendant Beltz and his son; and there are no circumstances that I can recall which tend to show that such explanation is not a true one. It is not claimed that he purchased any goods that were not strictly in the line of his business, nor that he purchased an amount greater than was necessary to properly conduct it, when extended, as he proposed to do, by canvassing the surrounding towns for orders for clothes. Moreover, it is doubtful, to say the least, if the plaintiffs could in any way avail themselves of any fraud in making purchases, if it existed. "Where a vendor from whom goods have been obtained by fraud, instead of disaffirming the contract of sale, affirms it by bringing suit thereon, and prosecuting it to judgment, neither he, nor a receiver appointed in supplementary proceedings instituted upon such judgment, can set up the fraud in the sale, for the purpose of defeating an assignment of the property made by the vendee for the benefit of creditors, although the assignment was made in furtherance of the fraud, with full notice thereof upon the part of the assignee." *Kennedy* v *Thorp*, 51 N. Y. 174.

A careful study of the evidence in this case has led me to the conclusion that it was insufficient to justify the finding of the referee that the assignment in question was fraudulent. As was said by FINCH, J., who delivered the opinion in the case of *Shultz* v. *Hoagland*, 85 N. Y 467: "The case furnishes no exception to the rule that fraud is to be proved, and not presumed. *Grover* v. *Wakeman*, 11 Wend. 188. It is seldom, however, that it can be directly proved, and usually is a deduction from other facts which naturally and logically indicate its existence. Such facts, nevertheless, must be of a character to warrant the inference. It is not enough that they are ambiguous, and just as consistent with innocence as with guilt. That would substitute suspicion as the equivalent of proof. They must not be, when taken together and aggregated, when interlinked and put in proper relation to each other, consistent with an honest intent. If they are, the proof of fraud is wanting." In *Morris* v. *Talcott*, 96 N. Y. 107, RUGER, C. J., states the rule as to proof of fraud as follows: "A party, therefore, relying upon the establishment of a cause of action, or a right to a remedy, against another, based upon the alleged commission of a fraud by such person, must show affirmatively facts and circumstances necessarily tending to establish a probability of guilt, in order to maintain his claim. When the evidence is capable of an interpretation which makes it equally as consistent with the innocence of the accused party as with that of his guilt, the meaning must be ascribed to it which accords with his innocence, rather than that which imputes to

him a criminal intent.    It is well settled in this state that an intent to defraud cannot be imputed to a party who contracts a debt knowing that he is insolvent, merely from the fact of his insolvency, and his omission upon a purchase of property upon credit to disclose such condition to his vendor.    *Nichols* v. *Pinner*, 18 N. Y. 295; *Nichols* v. *Michael*, 23 N. Y. 264; *Wright* v. *Brown*, 67 N. Y. 9; *Bank* v. *Bogart*, 81 N. Y. 108.    A condition of known insolvency on the part of an intending purchaser of property, accompanied with an intention to acquire the property of his vendor without paying for it, constitutes such a fraud as will make the vendee liable to arrest in an action for the debt; but the intention not to pay can no more be inferred from the mere fact of insolvency than the fact of insolvency can be inferred from the existence of an intention not to pay.    In either case it is essential that the necessary facts be made out by competent evidence."    In the case at bar it does not seem to me that the facts proved naturally or logically indicate the existence of fraud.    They are at least as consistent with innocence and an honest purpose as with fraud.    The evidence may possibly arouse a suspicion, but it does not establish fraud.    Following the principle of the authorities cited, I am of the opinion that the evidence in this case was insufficient to sustain the findings of the referee, and that the judgment should be reversed.