Cuyler *v.* McCartney.

---◆---

CUYLER and others *vs.* McCARTNEY and others.

The general proposition that the admissions or declarations of an assignor
cannot be received in evidence to affect the rights of third parties, is sub-
ject to this exception ; that when a fraudulent combination is established,
the acts and declarations of any one of the parties thereto may be proved
against the others.

The rule, and the exception, are applicable to assignments in trust for the
benefit of creditors.

But the combination or conspiracy cannot be proved by the declarations of a
party to it. It must be established by other evidence than the declarations
or acts of the party, before such declarations can be admitted.

What is sufficient evidence of such a combination, is not a question, in the
first instance, for the jury, but for the court.

A foundation must first be laid, by proof sufficient in the opinion of the judge,
to establish, *prima facie,* the fact of a conspiracy between the parties, or
proper to be laid before the jury, as tending to establish such fact.

What is sufficient evidence to establish a common design on the part of an as-
signor, and the assignees, in an assignment in trust for the benefit of cred-
itors, to defraud the creditors, so as to admit evidence of the declarations
of the assignor.

THIS was an appeal from a judgment for costs entered at a special term upon a verdict for the defendants. The action was brought to recover the value of certain personal property, taken by the defendant, Hugh McCartney, then the sheriff of Livingston county, from the plaintiffs, by the direction of the other defendants. The plaintiffs claimed the property as the assignees of William T. Cuyler, in an assignment in trust for the benefit of creditors. The complaint alleged that on or about the 31st day of August, 1857, William T. Cuyler, by a certain deed of assignment conveyed to the plaintiffs, for the uses and purposes therein mentioned, all the real and personal property that the said William T. Cuyler owned, or had the right to convey on that day, except property exempt from levy and sale on execution, including the property in the said complaint particularly described ; that on the day of the date of said deed of assignment, the plaintiffs took possession of the property under and by virtue of said deed ; that the defendants, on the 16th day of October, 1857, wrongfully took from the possession of the plaintiffs the said property and converted the same to their own use, which goods and chattels were of the value of $45,000. The defendant, McCartney, by his answer denied the wrongful taking, and set up by way of justification, that at the time of the alleged taking, he was sheriff of the county of Livingston ; that the property described in the complaint was, at the time of the taking, the property of William T. Cuyler ; that several judgments having been recovered against the said William T. Cuyler and George M. Cuyler, in the supreme court, and docketed in the clerk's office of the county of Livingston, executions thereon were issued and delivered to said defendant as such sheriff. That by virtue of said several executions, he duly levied upon the personal property of said William T. Cuyler, on the 10th day of October, 1857, being the property mentioned and described in the complaint, and that the property was at the time of such levy the property of said William T. Cuyler.

Cuyler *v.* McCartney.

That the assignment from William T. Cuyler to the plaintiffs mentioned in the complaint, was made and executed by the said William T. Cuyler with the intent and for the purpose of hindering, delaying and defrauding his creditors; that George M. Cuyler, who is a son of William T., was made a party to such assignment, with the intent, and for the purpose of enabling the said William T. to hinder, delay and defraud his creditors; that George M. accepted the same with a knowledge of the fraudulent intent on the part of the assignee, and to aid and assist him in such design; that the plaintiffs, at the time of the assignment, were both insolvent, which was known to the said William T. That by the assignment, the plaintiffs were directed to pay George M. the sum of $8000, which is charged to be a mere pretended debt; that William T. was not indebted to George M. in any such sum; that the plaintiffs were directed to pay various persons, who were laborers in the employment of William T., amounting to the sum of $15,000; that such indebtedness was not real, but that he made the assignment intending to collude with said laborers, or some of them, for the purpose of defrauding his creditors. That the plaintiffs, since the execution of the assignment, have not had the control and management of the assigned property, and did not take possession of the same under the assignment; that the said property was controlled, managed and used by the said William T. the same as though no assignment had been made; that the said William B. Wooster had not been permitted to have, and did not have, any part or portion in the management or control of the assigned property; that William T. used the property for his own maintenance and support; that he used portions thereof to pay claims which had no legal or equitable existence. The answers of the other defendants were similar to the answer of McCartney. After the testimony closed the case was submitted to the jury under a charge from the court. The jury found a verdict for the de-

fendants, and from the judgment entered thereon, the plaintiffs appealed.

*James Wood, jun.* for the appellants.

*J. C. Smith,* for the respondents.

*By the Court,* KNOX, J. The action was for selling certain property which the plaintiffs claimed as assignees under a voluntary assignment made by William T. Cuyler to the plaintiffs on the 31st day of August, 1857. The main question was as to the validity of this assignment. Was it made to hinder, delay or defraud creditors? The jury found that it was; and the plaintiffs now ask for a new trial, on the ground that improper evidence was admitted upon the trial, which bore with such directness and force upon the main issue involved, that the court cannot say that it did not contribute greatly to produce a verdict against the plaintiffs.

To apprehend, clearly, the precise point upon which, it seems to me, the decision must turn, it will be necessary to look into the testimony, and see how the case stood when the evidence, which it is contended was illegal, was admitted.

The plaintiff had proved the execution and delivery of the assignment to George M. Cuyler, the son of the assignor and his general agent, and Wm. B. Wooster. The assignment purported to bear date the 28th of August, 1857, but was acknowledged and recorded on the 31st of the same month. He had proved also the value of the property sold. The evidence showed that the plaintiff was engaged in the business of distilling, and that he was the owner, previously to the assignment, of a large amount of different kinds of property, real and personal. It would seem also that although the assignment was formally executed and delivered, there was no change in the business of the concern until after the levy made by the defendant in this action. All things remained in *statu quo* until the levy. The assignees, it would seem, hired some hands to work for them as assignees, but

there was evidence to show that the plaintiffs did not take possession of the property assigned; certainly there was no sufficient evidence that they did take such a possession as assignees ought to take when an assignment is made in good faith. The defendants had proved several judgments against Wm. T. Cuyler, and that upon the executions issued on these, the property in dispute was taken and sold, for which taking this action is prosecuted. At this stage of the trial, Anson D. Smith was called and sworn by the defendant. He testified that on the 30th of August he went down to Cuyler's, on Sunday. " I was told the Cuylers had made an assignment. I met W. T. Cuyler at the gate, and asked him if George was at home. He said " Yes, at the house." Question. " What did Col. Cuyler say?" Objected to. Objection overruled and exception. " I told him I had heard bad news ; that I had heard he had made an assignment; that it came from a man in Leroy. He said he did not know how it could get out, because it was not known, but that he had made an assignment, and George would tell me all about it. After we got to the house he said, ' You are all right; we have taken care of you ; you are provided for in the first class.' I had conversation with both. George stated that his father had made an assignment, and appointed him and Wooster assignees. That the object was to turn out real estate, and shape it up, and that the reason was that a man by the name of Forbes had sued him for $6000 or $7000, and that he had looked over and did not owe him so much. That Mr. Ayrault was going to sue, or had sued him ; that he did not owe Forbes more than $300 or $400. Col. Cuyler said, ' The boys will want you to take property, and it will be all right; we calculate to pay 100 cents on the dollar. We can't pay all, and I want you to assist the boys in settling it up.' Did not want me to say any thing about the assignment until it was made known otherwise, or what passed between us in regard to assignment; that he wanted to arrange with other creditors by turning out property."

William W. Wooster, one of the assignees, was sworn for the defendant, and after stating some declarations of Wm. T. Cuyler, as to the assignment, without objection, he testified, under objection, that he had a conversation with W. T. Cuyler, before the levy, about the 1st of October. · "George was not present. Col. Cuyler asked me how I got along. I said, not very well. He asked me what was the matter. I said the creditors found fault that matters did not go along fast enough. He said they hurried as fast as they could. I said they did not suit me. I could not control the property. He said, My God, William, I do not control it. I said I did not know who did." Again: "Mr. W. T. Cuyler came to my house after the levy. He did not want me to tell Ayrault where the high wines were, for they should have nothing to fight them with. He asked me why I went in with Mr. Ayrault. I told him the creditors were blaming me for not carrying out the instructions in the assignment, and rather than be blowed up for things I knew nothing about, I said I had told of the hogs shipped to Livonia."

Anthony M. Wooster, a witness for the defendant, testified that on the 12th day of October, 1857, he met W. T. Cuyler, and "Mr. Cuyler asked me if I had seen George. I said I had. He said I had better go back. George wants to turn out property on your debt. I said I understood property had been levied on. He said no property had been levied on, except a little around the distillery. I said, if I could hold it I should be glad. He spoke about turning out rye, barley in stacks, and some calves. ·I said I should be glad to have them."

This comprises all the evidence which was objected to, of declarations made by the assignor, Wm. T. Cuyler, either before or after the assignment, and it will be seen that it is of such a nature and character that it must necessarily have had weight with the jury, and perhaps controlling influence. It will also be observed that the declarations of Cuyler were not made contemporaneously with the execution of the assignment, qualifying and giving character to it; they were not

part and parcel of the transaction itself in such a sense as to acquire the character of "*res gestæ*," and so be proper evidence; and hence their admission was in hostility to the rule established by repeated decisions in this state, which excludes the declarations of an assignor, affecting the rights of those deriving title from him. (*Jones* v. *The Methodist Church*, 21 *Barb.* 175.)

The principle and reason of the rule extend to the case of an assignment in trust for the benefit of creditors. (*Opinion of Johnson, J. in case last cited.*) This general proposition, that the admissions or declarations of an assignor cannot be received in evidence to affect the rights of third parties, is not denied; but it is claimed that among the several exceptions to it is one within which the evidence objected to was admissible. It is, that when a fraudulent combination is established, the acts and declarations of any one of the parties thereto, may be proved against the others. This is undoubtedly a well settled exception to the general rule of evidence above stated, and many cases in the books are found, illustrating its application, both in criminal and civil actions, in courts of law and courts of equity. "It is an established rule," says *Phillips*, (*Ev. vol.* 1, *p.* 205,) " that when several persons are proved to have combined together for the same illegal purpose, any act done by one of the party in pursuance of the original concerted plan, and with reference to the common object, is, in contemplation of law, the act of the whole party; it follows, therefore, that any writings or verbal expressions, being acts in themselves, or accompanying and explaining other acts, and so being part of the *res gestæ*, and which are brought home to one conspirator, are evidence against the other conspirators, provided it sufficiently appear that they were used in the furtherance of a common design." Again : " But where words or writings are not acts in themselves, nor parts of the *res gestæ*, but a mere relation of some part of the transaction, or as to the share which other persons have had in the execution of the common design, the evi-

dence is not within the principle above mentioned." (*See* 1 *Greenl. Ev.* 187, § 111, *and cases cited in note.*) In *Willies* v. *Farley*, (3 *Carr. & Payne*, 395; 14 *Eng. Com. Law*, 366,) it was proved that on the 13th day of July, 1827, the plaintiff, Edward Willies, sued out an execution against the goods of John Willies, and that the defendant, as sheriff, on the 16th of July, executed a bill of sale of the goods, which were the goods in question, to the plaintiff, and that on the 9th September in the same year the sheriff seized the same goods under another execution against John Willies, at the suit of Humphrey & Co. The defense was that John Willies remained in possesison, and that the plaintiff's execution was merely colorable, and that therefore the goods really were the property of John Willies. To show this, the defendant's counsel wished to ask the sheriff's officer what John Willies said when Messrs. Humphreys' execution went in. The evidence, though objected to, was received, Vaughn, B. saying that·" what John Willies said as to whose the goods were, he being in possession of the goods, is evidence." In *Apthorp* v. *Comstock and others*, (2 *Paige*, 482,) where a bill was filed for relief against a deed alleged to be forged, or fraudulent, or otherwise invalid, the chancellor said: " I think there was sufficient evidence of a fraudulent combination between John Comstock, Hepburn and some others not necessary to be named here, to extort money from the heir of Davenport and others by means of this deed, &c. The acts and declarations of Talman, Hepburn, &c. therefore formed a part of the *res gestœ*, and were admissible in evidence against Comstock."

*Waterbury* v. *Sturtevant*, (18 *Wend.* 354,) was the case of a bill filed to set aside as fraudulent, a deed executed by Jura Waterbury to his father, in October, 1828. While on the limits in the summer of 1829, on the execution, upon the return of which the bill was filed, he said to one Kells that he was then " on the limits, on account of the judgment, and that he had put his property out of his hands on account of

the judgment, to prevent their collecting it." Cowen, justice said, " To my mind the acts of Jura and his father, connected with other facts appearing in the case, evince an intent common with both to defraud Sturtevant.  It follows, therefore, that the concurrent and subsequent acts of Jura, his conveyance to Moore, his other arrangements tending to effectuate the fraud, and finally going on the limits, are all admissible to affect the father as parts of the scheme.  His son going on the limits, thus obstinately persevering in the attempt, and still withholding means which had been placed beyond Sturtevant's reach by the co-operation of others, may, I think, be regarded as a part of the scheme, and his declarations while there, properly received against all who had participated.  I therefore think that Jura's direct admission of fraud, to Kells, may be properly added to the evidence as between Sturtevant and the father, if the case be not sufficiently clear without it."  (*See also* 1 *Rawle*, 360, 458.)

From these cases and those referred to in the opinions delivered, I think it is not difficult to see what the rule of evidence is, touching the admission of the declarations of third parties.  In this case, therefore, the declarations and acts of Wm. T. Cuyler were admissible if a fraudulent combination was established.

Clearly, it will not do to prove the declarations and acts of the party, to establish the conspiracy, for this would be to assume the existence of a fact, and then say it existed, because it had been assumed.  The combination or conspiracy must therefore be established by other evidence than the declarations or acts of the third party, before they can be admitted. *When* there is sufficient evidence of such combination, is not a question in the first instance for the jury, but for the court.  " A foundation must first be laid, by proof, sufficient, in the opinion of the judge, to establish, prima facie, the fact of a conspiracy between the parties, or proper to be laid be-

fore the jury, as tending to establish such fact." (1 *Greenl. Ev.* 187, § 111.)

It would be a question for the jury, and is, in all cases where it is in issue on the merits ; but where it is raised incidentally, in relation to a question about the admission or rejection of evidence, it is not. (*Harris* v. *Wilson,* 7 *Wend.* 57.) This last case illustrates the principle. It was there held that "Evidence received by a judge, on the trial of a cause, as preliminary to the introduction of other evidence, is not to be submitted to a jury : it is the province of the judge, and not of the jury, to pass upon its sufficiency : accordingly, when proof of the admissions of an alleged partner was offered to be shown, it was held it was the province of the judge, and not of the jury, to pass upon the fact, whether he was a partner or not." (*Rex* v. *Stone,* 6 *Term R.* 527.)

The inquiry in this case, therefore, is narrowed down to this : Was there, when the evidence of the declarations of W. T. Cuyler was offered, sufficient evidence already before the court, to establish a common design on the part of W. T. Cuyler, the assignor, and George M. Cuyler and Wm. B. Wooster, the assignees and plaintiffs, to defraud the creditors of Wm. T. Cuyler ? In my judgment there was. I do not mean that there was such strong evidence, that the verdict of a jury would have been set aside, had they found against it ; but it would not have been set aside, had the verdict been with the evidence. As before remarked, the evidence showing that the plaintiff was doing, and had been doing, an immense business ; was the owner of a large amount of property, real and personal ; the personal footing, as appears by the memorandum made by the witness Jarrad at the time of the sale on the executions, at over $33,000. The real estate must have been very valuable. But no inventory seems to have been made of the assigned property, or any inventory, except that just mentioned, of the property sold

by the sheriff. There was no substantial change in the business, and no substantial change of the possession of the property. In a word, I think that the court, on the proof as it stood when the evidence objected to was offered, would have been justified in saying that Cuyler, finding himself pressed by suits, which would soon end in executions upon his property, was driven to the resource of this assignment, to keep the property beyond their reach, while he could really retain possession till a more favorable opportunity arrived for settling with his creditors.

The assignment bears date the 28th, but for some unexplained reason was not executed and delivered till the 31st of August, 1857. Was it kept ready to be used if occasion required? It does not appear affirmatively in the case, upon what ground the learned justice admitted the declarations of Cuyler; but when we see that he charged the jury "that the assignors *and assignees* must have intended to defraud the assignor's creditors in making the assignment, in order to render the assignment fraudulent and void," it is plain that he admitted the evidence on the ground of an intent in both to defraud. In the case of a voluntary assignment for the benefit of creditors, when the assignee is a mere trustee for creditors, and pays no consideration, it is not necessary that the assignee should harbor the intent to defraud, before the assignment can be declared void. (*Griffin* v. *Marquardt & Judson,* 17 *N. Y. Rep.* 28.) But the charge in this respect, cannot be complained of by the plaintiff, because it was more favorable to him than was warranted by the law.

When questions of fraud are involved, it is usual to allow considerable latitude in the examination of witnesses, and the introduction of evidence; and so in this case some evidence was given which was immaterial, or bore so remotely on the issue, that it might properly have been rejected, but there were no errors of this kind committed of so grave a

character as should constrain us to reverse a judgment which seems to be well warranted by the evidence.

The judgment must be affirmed.

[CAYUGA GENERAL TERM, June 4, 1860. *Smith, Johnson* and *Knox*, Justices.]