RICHARD T. WILSON *et al. against* WILLIAM O'DAY AND HENRY D. OSTERMOOR, IMPLEADED WITH CYRUS OLMSTEAD.

In an action against several persons for conversion a statement made by one of them, which is not a part of the *res gestæ*, is not admissible as evidence against the others, unless *prima facie* evidence of a conspiracy between all of them has been introduced.

A warehouseman having changed his books so as to show that certain goods were received by him on a different day from that on which his books originally showed that they had been received: *Held*, that the possession by the party storing the goods of the warehouseman's receipts corresponding with the entries in the warehouseman's books as altered was no evidence that the party storing the goods was a party to, or knew of the alterations in the books.

APPEAL by defendants from a judgment of this court entered on the verdict of a jury, and also from an order denying a motion for a new trial.

The action was for the conversion of 164 bales of cotton.

Plaintiff had a verdict for $17,639 86, and a motion for a new trial was denied.

Defendants appealed to this court.

*Beebe, Donohue & Cooke*, for appellants.

*Brown, Hall & Vanderpool*, for respondents.

ROBINSON, J.—Plaintiffs, between December 17th, 1869, and January 31st, 1870, had on store with the defendant Olmstead, a warehouseman, in his warehouses No. 500 to 510 Washington street, in the city of New York, a quantity of cotton amounting to upwards of 900 bales, which was to a considerable extent injured by a fire that occurred January 1st, 1870. They claim in this action that just prior to such fire, the defendants had converted to their own use some 164 bales of this cotton. To maintain such charge, they called as witnesses on their behalf the several defendants, who however severally asserted that the transactions brought in question, relating to two several parcels of cotton sold by O'Day to Ostermoor, to wit, 111 bales on the 15th and 16th of January, 1870, and 53 bales delivered the day before the fire, as evidenced by certain verified bills of O'Day and checks of Ostermoor given in payment, were *bona fide*, and related to other cotton than any belonging to plaintiffs. Plaintiffs' cotton had its distinctive marks upon the bagging on each bale, and none of the 164 bales of cotton with which defendants are seriously sought to be charged, has been attempted to be identified with any of the bales of cotton that belonged to plaintiffs, from any similarity of marks upon the bale, or any other recognizable mark of distinction, except as to one bale said to have been found at a warehouse, No. 40 West street, and to have been there examined and identified, and it is upon claim to such identification alone that the charge of conversion of the whole 164 bales is based. Of the 101 bales of cotton sold by O'Day to Ostermoor, on the 15th and 16th of January, a city weigher, named Diegan, who weighed it for Ostermoor, testifies 73 were marked " O. D." or " W. O. D.," and those were the only two marks upon them " except what was marked by Leveridge's (a purchaser of a portion of this lot) receiver or sampler, which was ' Tom ' and ' Cat,' according to the grades." O'Day, it is shown, had been a large purchaser of cotton which was marked " O. D." or W. O. D.," that being his distinctive marks. After the fire, and about the 25th of March, the weigher Diegan, in company with the fire marshal, went to the warehouse No. 40 West street, where Leveridge had stored the

cotton he had bought (part of the 111 bales), to examine a bale of cotton there. He was asked : " *Q.* Was it in the 111 lot ? *A.* I thought it was as near as I could judge ; there was part of the marks cut off ; I thought it was my weight, and I find it compared with the weight that was in my book ; I thought as near as possible it was one of those bales." On cross-examination he was asked : " *Q.* What did you see on the bale ? *A.* That is there in my deposition (not read). *Q.* Can you remember anything independent of that ? *A.* No ; without it was either 'Tom' or 'Cat.' *Q.* Any other mark upon it ? *A.* That I don't remember ; there was nothing peculiar about the bale, the bale itself. *Q.* Did you observe anything peculiar about the quality of the cotton ? *A.* I don't know the grade of cotton at all. *Q.* You don't identify it by anything but 'Tom' or Cat ?' *A.* I will not swear 'Tom' or 'Cat' was on that bale at all, because neither was on it, there were only parts of either one. *Q.* Can you tell what parts ? *A.* I can't tell ; it was the first or last letter of either. There was only one letter of the three. It was either the first or last letter. That would be C, T or M. I don't remember which of these letters. It was a capital letter such as samplers put on bales. * * I don't remember I saw 'O. D.' or 'W. O. D.'" *Redirect.* "What were the marks you say you thought were your weigh marks ? *A.* Figures ; we always put the weight on bales. All weighers generally do. I don't remember what the figures were." This establishes no identity between the bale of cotton thus described and that testified to by the plaintiff Johnson, which he saw at No. 40 West street. He was asked "What marks did you see on the bale at 40 West street ? *A.* I saw 'R. B, C., O. D. X.' in a circle, and there was a number on it, but I am not positive what it was. I had an idea of what it was, but am not positive. I think it was 185."

This in no respect identifies any such bale as that referred to by Diegan, nor with any cotton of plaintiffs described in their warehouse receipts for cotton stored with Olmstead, nor with the marks on the five bales shipped to them from Georgia by W. C. Lanier, marked " J. H. C.," and numbered 181 to 185. Mr. Holstein, however, testifies he identified a bale of cotton

he examined, in company with Mr. Johnson, as one of five he had marked at West Point, Georgia, for C. W. Winter, by the (X) and the number 185 he had put on it.   Mr. Lanier testifies his firm bought from C. W. Winter, and early in the winter shipped to plaintiffs, five bales marked "(X) J. H. C.," and numbered 181 to 185 inclusive.   No bale so marked "(X)" or "185" is indicated on the warehouse receipts held by plaintiffs.   A porter from the store 40 West street, called by plaintiffs, testifies that all the cotton received from Leveridge & Co. was marked "Tom" and "Cat."   John Connor, a witness originally called by plaintiffs, and the only witness that examined all this cotton, swore positively "there was *no other* mark on the cotton Ostermoor bought of O'Day except 'O. D.' or 'W. O. D.'"   The slender thread upon which rests the attempted identification of this single bale of cotton examined by Holstein through his marks (X) 185, is so broken and disjointed, that it furnishes no connected link to charge the defendants O'Day and Ostermoor, and particularly the latter, with having ever had anything to do with it.   That connecting link, if it existed, fails, from any such knowledge or recollection of Diegan, as identifies the bale examined by Holstein with any he weighed for Ostermoor.   To found a claim of such a magnitude, and so serious in its imputations upon the credibility and character of all the defendants, and nearly all the witnesses having any knowledge of the transaction, upon testimony so uncertain as the *thoughts* of so uncertain and forgetful a witness as Diegan, or upon mere presumptions, as against the POSITIVE statements of witnesses called by the plaintiffs, and presented by them as credible, seems most unreasonable.   In my opinion, there was lacking any legal evidence upon which defendants could be charged with any or (if at all), with more than one bale of cotton.   Giving full effect to the claim that the bale examined by Holstein did belong to plaintiffs, it in no way justified the recovery that has been had for the other 163 bales, not one of which is pretended to have been identified as plaintiffs' property.   But other errors occurred on the trial, which require a reversal of the judgment: 1st. The action being one for conversion against all the defendants, and without any pretense

that any conspiracy had been established or any circumstances adduced in evidence giving color to such a charge, plaintiffs were allowed to give evidence of an admission by the defendant Olmstead, against the objection of his codefendants, which virtually disposed of the whole case, since from it might be deduced every fact tending to charge his codefendants with the property in dispute ; it was to the effect that he was receiving no goods on store from any one but the plaintiffs, and established, *prima facie*, that the goods in question, of which the defendants O'Day and Ostermoor had subsequently come into possession, belonged to plaintiffs. The objection was made, on the part of O'Day and Ostermoor, that it was hearsay and irrelevant, and as not affecting those defendants, but on the assurance of plaintiffs' counsel that he would introduce further evidence connecting O'Day and Ostermoor with it, and making it competent against all the defendants, the court overruled the objection, and the counsel for those defendants excepted. The testimony objected to was then given ; and in allowing it at that stage of the proofs, the court erred. This admission was at most a mere statement or narrative of past occurrences, and was not made during the pendency of the alleged fraudulent transactions, and with a view to further their objects. It was an admission, operating against these defendants, of the statement made by an alleged coconspirator, without the conspiracy having been previously established by any *prima facie* evidence. The matter admitted constituted no part of the *res gestœ*, but was of a past fact, and made to an entire stranger to the transaction. The objection, under these circumstances, was well taken (1 Greenl. Ev. § 111 ; 3 Id. § 92 ; *Cuyler* v. *McCartney*, 33 Barb. 165 ; s. c. 40 N. Y. 221 ; *Peck* v. *Yorks*, 47 Barb. 131 ; *Bennett* v. *McGuire*, 58 Barb. 637). Olmstead was a competent witness to prove any such fact; he was called on behalf of the plaintiffs, and examined to such matters as they chose to elicit from him. His oath, and not his admissions, should alone have been resorted to.

2d. After the complaint had been dismissed, as against the defendant Olmstead, for want of evidence of any cause of action against him, and a like motion on behalf of the others had been denied, he was called as a witness on the part of the

plaintiffs, and produced his ledger. It showed entries of receipts on storage of cotton from O'Day, of upwards of 200 bales in the fall of 1868, and of 219 in the fall of 1869, and he then stated it had been posted from *the order book* and contained a true statement of the cotton of O'Day, that was in the storehouse in the beginning of January, 1870. The counsel for defendants O'Day and Ostermoor then produced warehouse receipts signed by Olmstead, and acknowledging the receipt of 219 bales of cotton in November and December, 1869, at dates and in amounts corresponding with the entries in the ledger. Plaintiffs then offered, and were permitted, against the objection and exception of defendants, to prove that such account in the ledger had been altered since its examination after the fire, by substituting *November* for " January" and *December* for " February," and instead of an entry under date of December 30, 1869, that when examined it was " March 3," 1870. Although the plaintiffs introduced the ledger in evidence, when it was appealed to by the defendants, to verify their warehouse receipts, it was legitimate for them at least to destroy any prestige or weight of credit the receipts derived from that source by showing they did not correspond originally, but only through the recent alteration of the book. But in showing this absence of original conformity and the alterations made by some one in the ledger account, the circumstance (although betokening some irregularity and a possible fraudulent intent on the part of the person making the alteration) did not justify the conclusion to which the judge arrived as to its legal effect and bearing. It must be borne in mind that the entire integrity of the transaction in which these defendants were concerned, the regular deposit by O'Day of the cotton in Olmstead's warehouse, its sale and delivery in good faith to Ostermoor, and his payment of the full price had been proved by the various persons the plaintiffs had themselves called as witnesses, and the entire lack of identification of any of the cotton, except possibly as to one bale, the utmost shown by such alteration was only ground of mere vague suspicion of any fraud on the part of Olmstead and O'Day. The order book from which this ledger had been posted was not produced, and these

defendants were not shown to have been in any respect parties to this alteration, and yet the judge charged the jury that "if any fraud was committed by Olmstead, by the alteration of these books, that fraud is brought home to O'Day by the production of the warehouse receipts." No such legal consequences could naturally result or be deduced from O'Day's possession of the original warehouse receipts, nor any legal conclusion that the fraud, if any, of Olmstead was brought home to O'Day, because as altered, the entries correspond with the receipts. The alteration may have been accounted for in many ways without O'Day having any connection with it. It was at most a mere item of evidence tending to confirm other proof of fraud. It may have been a mere correction made by Olmstead from his order book, or if he was guilty of any fraud (but of what possible it is difficult to conceive, unless he had substituted plaintiffs' cotton for O'Day's), his guilt in no way became *necessarily* imputable to O'Day. For the error in the denial of a motion for a new trial, for want of any evidence that could legally charge these defendants with the 164 bales of cotton claimed, as well as in the erroneous rulings by the learned judge on the trial above referred to, the order denying a new trial and the judgment should be reversed, and a new trial ordered, with costs to abide the event.

LARREMORE, J., concurred.

Ordered accordingly.