[2] When, therefore, the Compensation Commission found and determined, after a hearing, that the plaintiff's injuries were not the result of an "accident," it found by necessary implication that such injuries were not due to the defendant's negligence, or occasioned as alleged in the complaint. The importance and legal significance of this adjudication by the Compensation Commission arises out of the fact that, by the provisions of section 20 of the Compensation Law, the commission is required to determine the claim made before it for compensation, after notice to the interested parties, and an opportunity to present evidence and be represented by counsel. The act then declares that:

"The decision of the commission shall be final as to all questions of fact, and, except as provided in section 23, as to all questions of law."

Therefore it is that the holding of the commission that the plaintiff's injuries were not due to "accident" makes that question res adjudicata as to the plaintiff and the defendant in this action, and precludes a further inquiry into the questions of fact in this action.

The adjudication of the Compensation Commission was therefore properly set up in the answer of the defendant as bar against the plaintiff in an effort to establish in this action that his injuries were occasioned by the negligence of the defendant, which our interpretation of the act would constitute an "accidental injury."

[3] If the Compensation Commission was in error on the decision of the application made to it, the plaintiff's remedy was to appeal from its decision to the Appellate Division of this court, as provided in section 23 of the Compensation Law.

I am therefore of the opinion that the demurrer of the plaintiff to the fifth clause of the defendant's answer should be overruled, with costs of this demurrer. So ordered.

---

(96 Misc. Rep. 222)

### ERIE COUNTY v. FRIEDENBERG et al.

(Supreme Court, Special Term, Erie County.　July 3, 1916.)

1. WATERS AND WATER COURSES ⬅️105—SUBSURFACE WATERS—LIABILITY OF OWNER FOR OBSTRUCTION OF DIVERSION.

The owner of soil, in the use or improvement of his property, may intercept or divert percolating subsurface waters without liability for damage to other lands.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 113; Dec. Dig. ⬅️105.]

2. EMINENT DOMAIN ⬅️271—CONSTRUCTION OF HIGHWAYS—LIABILITY FOR DAMAGES.

A county, constructing a highway across private lands without condemnation proceedings, is a trespasser, and liable as such for all damages to land.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 725–736, 741; Dec. Dig. ⬅️271.]

---

3. EMINENT DOMAIN ⟨key⟩122—COMPENSATION—MEASURE.
     The owner of lands taken by condemnation proceedings is entitled to such compensation as will fully indemnify him for all damages proximately and consequentially resulting from the taking.
     [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 325, 325½; Dec. Dig. ⟨key⟩122.]

4. EMINENT DOMAIN ⟨key⟩136—DAMAGES—MEASURE.
     The measure of damages to lands taken by eminent domain is the difference between the value of the whole before the taking and the value of the remainder after the taking.
     [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 363–366; Dec. Dig. ⟨key⟩136.]

5. EMINENT DOMAIN ⟨key⟩98—ACQUISITION OF COUNTY HIGHWAY—DAMAGES—DESTRUCTION OF WELL.
     In condemnation proceedings to acquire land for construction of a county road, the county is liable to the owner for the destruction of a well, caused by the draining of percolating subsurface waters.
     [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 252–255; Dec. Dig. ⟨key⟩98.]

Proceeding by the County of Erie against Sol. L. Friedenberg and others to determine compensation to be paid defendants for the taking of lands appropriated for highway purposes. On motion to confirm report of commissioners. Report confirmed.

Carleton H. White, of Buffalo, for plaintiff.
Frederick Ullman, of Buffalo, for defendants Friedenberg.
Charles H. Addington, of East Aurora, for defendant Snyder.

WHEELER, J. These proceedings were taken to determine the compensation to be paid to the owners and others interested in the land described in the petition, and appropriated for the purpose of building a highway or state road extending across a portion of a farm owned by the defendant Sol. Friedenberg in the town of Aurora, Erie county.

The highway in question was constructed by making a cut some 42 feet in depth through a hill on the owner's premises. Near this cut was an excellent well of water, fed by springs or by percolation, and in making the cut the water from this well drained off and left the well dry. It appears that efforts have been made by digging and drilling to obtain water at other points on the farm convenient for use, but without success. In making their award the commissioners itemized the damage and included in their award the sum of $1,500 for the loss of the waters supplying the well. To this item in their award the county of Erie files objections, and contends that the commissioners had no right to award the owner anything by reason of the loss of the waters supplying this well. The objection is not made to the amount of the award, but to the legal right of the owner to be paid anything for the loss of the waters in question.

The evidence before the commissioners justified the finding made by them that the well became dry immediately after, and as a direct result of, the blasting done upon the parcels of land taken and the cut or excavation made. It is contended by the county, however, that inasmuch

as the evidence in the case does not show that the well in question was supplied by a subterranean stream the presumption is that it was fed by water either from springs or by percolation through the soil. 30 American & English Encyclopedia of Law (2 Ed.) p. 310 et seq.

It is therefore urged that no compensation should be allowed the owner for its destruction by the building of the highway. The counsel for the county invokes in support of his contention the general rule that the owner of the soil may intercept and divert the percolating subsurface waters without incurring liability to owners of neighboring lands through which the waters so diverted or intercepted would have flowed or percolated, even though the consequence of his act in so diverting or intercepting the percolating waters would injure or even destroy or render entirely worthless another's well. 30 Am. & Eng. Enc. of Law (2d Ed.) p. 310 et seq.; Hart v. Jamaica, 133 Mass. 488; Parker v. Boston, 3 Cush. (Mass.) 107, 50 Am. Dec. 709; Trowbridge v. Brookline, 144 Mass. 139, 10 N. E. 796; Hathorn v. National Carbonic Gas Co., 194 N. Y. 335, 87 N. E. 504, 23 L. R. A. (N. S.) 436, 128 Am. St. Rep. 555, 16 Ann. Cas. 989; Ellis v. Duncan, 21 Barb. 230; Village of Delhi v. Youmans, 45 N. Y. 362, 6 Am. Rep. 100; Bloodgood v. Ayers, 108 N. Y. 400, 15 N. E. 433, 2 Am. St. Rep. 443.

We are of the opinion, however, that the rule of law above laid down is not applicable to the case in hand, for this case is not one where the well is destroyed or injured by a neighboring owner making an improvement on his own land for its benefit, but is rather a case where land is taken from the tract benefited by the existence of the well by right of eminent domain, and by such taking the well is destroyed by the diversion of springs or percolating waters.

[1] The owner of lands, as an incident of such ownership, has the right, for some purpose connected with ordinary operation of agriculture, mining, domestic use, or improvement, to improve his own property, and, if incidentally such operations cause percolating waters to flow and discharge upon his own property to the detriment of his neighbor, the neighbor, while damaged, is without redress. A very different case is presented where another, by operations on the very lands where a well exists, destroys the same or damages the flow supplying it.

[2] Let us suppose that, without taking any proceedings to condemn the defendants' property by the exercise of the right of eminent domain, the county had proceeded with the construction of its highway and caused the damages in question. It would then have become a trespasser on the defendants' property, and no one would question it would render itself liable for all the damages the owner sustained, including the loss of the well. Can it be that by taking legal proceedings in the exercise of the right of eminent domain the county may avoid the payment of just compensation for the same loss thus sustained? We think not.

[3] As was said in South Buffalo Railway Co. v. Kirkover, 176 N. Y. 301, 68 N. E. 366:

"Considering the principle involved, unembarrassed by legal decisions, it is reasonable that when the state, in the exercise of the right of eminent domain,

sees fit to take the property of the citizen without his consent, paying there-for such damages as are the result of the taking, the commissioners in the condemnation proceedings should not only be permitted, but required, to award the owner a sum that will fully indemnify him as to those proximate and consequential damages flowing from this act of sovereign power."

And the court thereupon held that the owner is entitled to recover, not only the market value of the premises actually taken, but also any damages resulting to the residue by reason of the use to which the portion taken is to be put by the company.

[4] In ascertaining the damages the rule is to determine the value of the whole before the taking, and the value of what remains after the part condemned has been carved out of the whole, and the difference will be the damages to which the owner is entitled. People v. Eldredge, 3 Hun, 541; Troy & Boston R. Co. v. Lee, 13 Barb. 169; Canandaigua & N. F. R. Co. v. Payne, 16 Barb. 273; Matter of Trustees of N. Y. & B. R. Co., 18 App. Div. 8, 45 N. Y. Supp. 484; Matter of State Reservation, 16 Abb. N. C. 159.

[5] The application of this rule to this case necessarily involves compensation for the loss of the well, because the lands remaining were worth just so much the less by reason of its destruction. In making the allowance for the destruction of the well on the defendants' property, the commissioners were simply following the mandate of the statute (section 152, chapter 503, of Laws 1911), providing that such commissioners—

"shall * * * make and sign a report in writing, in which they shall assess, allow and state the amount of damages to be sustained by * * * owners of the several lots, pieces or parcels of land [to be] taken for the purposes aforesaid."

It would, indeed, be a very narrow construction of this statute which would exclude from the consideration of the commissioners a damage so substantial and direct as those incident to the destruction of the only available well on the owner's property. On the contrary, such statutes should receive a fair and liberal construction, in the interests of justice and for the benefit of those whose property is taken for public uses against their will.

It will be noted that in what we have said we have made the clear distinction between cases where the damages result from the taking of a part of an owner's property and cases where there is no taking of property, but damages resulting from operations on adjoining or neighboring property. But even in cases where the damages result in the loss of percolating waters or springs by operations on adjoining properties, there may arise conditions where the diversion of such waters will give the owners of neighboring lands a right to damages. We call attention to the case of Smith v. City of Brooklyn, 18 App. Div. 340, 46 N. Y. Supp. 141, affirmed in 160 N. Y. 357, 54 N. E. 787, 45 L. R. A. 664. Mr. Justice Hatch, writing for the court, there said:

"It may be stated, with some degree of confidence, that no case will be found in this state * * * where the right has been upheld in the owner of land to destroy a stream, a spring, or a well upon his neighbor's land, by cutting off the source of its supply, except it was done in the exercise of a legal right to improve the land or make some use of the same in connection with the enjoyment of the land itself, for purposes of domestic use, agriculture or

mining, or by structures for business carried on upon the premises. * * * While it is true that the city owned the land upon which it placed its structure, and * * * its acts were done upon its own property, it did not, however, make the erections or do the acts for the beneficial use and enjoyment of the land itself for any purpose of domestic use, agriculture, mining, or manufacturing. * * * We have the fact admitted by all legal writers that a property right exists in the percolating water of as high a character as the right to the land itself; it is in fact a part of the land. It is a valuable right, and its use is usually indispensable to the enjoyment of the land wherein it is found. This right is only qualified by the equal right of every adjoining landowner. The right of use is supported in either when, for purposes of use upon the land, or of the land, injury results to one as an incident to such use."

Accordingly the court held that where the city of Brooklyn erected waterworks on its own lands, sank wells, and installed powerful suction pumps, whereby waters on the adjoining property were drawn off, damaging the usefulness and its value, the city became liable for such damages.

In Forbell v. City of New York, 164 N. Y. 522, 58 N. E. 644, 51 L. R. A. 695, 79 Am. St. Rep. 666, it was held that where a municipal corporation, by the operation of a water system consisting of wells and pumps on its own lands, taps the subsurface water stored on the lands of an adjacent owner, leads it to its own lands, and by merchandising it prevents its return, whereby the value of the land of such owner is impaired for agricultural purposes, is liable to him in trespass for damages occasioned thereby. The court recognizes in this case the distinction already pointed out, and cites with approval Smith v. City of Brooklyn, 18 App. Div. 340, 46 N. Y. Supp. 141.

This case was followed by that of Hathorn v. Natural Carbonic Gas Co., 194 N. Y. 326, 87 N. E. 504, 23 L. R. A. (N. S.) 436, 128 Am. St. Rep. 555, 16 Ann. Cas. 989, and the court reiterated the rule, stated in the syllabus of the case, in the following language:

"At common law a landowner may, by pumps or otherwise, draw on the waters percolating under the surface of his lands for a purpose naturally and legitimately connected with the improvement and enjoyment of his lands, even though it interferes with others; but an attempt by artificial means to force and increase the flow of such waters for the purpose of diverting them to some use entirely disconnected with such improvement and enjoyment, whereby the flow of such waters under the lands of others is destroyed or diminished, may be restrained as unreasonable and unlawful."

Other cases might be cited, but those given above are sufficient to illustrate the thought in the mind of the court in their application to the facts of this case, that the diversion of the waters from the defendants' well was not for the purpose of improving the lands taken, or the purposes specified, but is an incident to the construction of a highway for general public use, and therefore takes it outside the purposes for which such a diversion is permissible, which brings the case within provisions of the statute requiring the commissioners appointed to determine the compensation to be paid "to allow and state the damages to be sustained by owners" of the land taken.

These considerations lead us to the conclusion that the action of the commissioners was correct, and their report should be confirmed.

So ordered.