Davis, P. J.
The plaintiff as executor of his deceased wife, brings this action for an accounting in respect of the estate of one William Dougherty, her former husband, of which estate she was by his last will, an executrix and one of the trustees. William Dougherty died in 1863, leaving a last will and testament, which was subsequently admitted to probate, in and by which he gave, devised and bequeathed to his widow absolutely, his residence in the city of New York and his furniture and other property therein “except such stocks and bonds as might be in said *116 house” at his decease. The will then proceeds as follows :
“I do also, and in addition to the above provision made in favor of my said wife, Mary Jane Dougherty, give and bequeath unto my executors, hereinafter named, all the rest, residue and' remainder of my estate, property and effects of every nature, kind and description wheresoever situated, upon the following trusts, that is to say: In trust to invest the same as soon after my decease as practicable, and to keep the same invested in bond and mortgage or in bank or insurance stocks, or in stocks,, bonds or other securities of the State of New York or of the United States,with power to change and vary such or any part of such investment from time to time, as my said executors may deem best, and to receive and pay over the income and interest to be realized therefrom to my said wife, Mary Jane Dougherty, during her-natural life ; and after the decease of my said wife, to pay said principal moneys so invested as above provided, to my two beloved sisters, Eleanor McGeary and Jane Dugan, in equal shares and proportions. And in case either or both my said sisters shall have died before the decease of my said wife, then and in such case the child or children of the one so dying to take and be entitled to the share and portion his, her or their mother would have been entitled to had such mother survived my said wife.” .
‘ Both of the sisters named in this provision of the will were living at the time of the death of the testator. At that time Eleanor McGeary had then living five children, to wit, Hugh, Francis, Patrick, John and William McGeary. William died in March, 1873, leaving eight children. Eleanor McGeary died in March, 1877. John'McGeary died after his mother, but before the death of Mrs. Dougherty, the life tenant, who died in 1882. John left three children him surviving.
*117 The question presented and in issue between the defendants in the action is whether the children of William and the children of John respectively, are each entitled to a share of the estate ; or whether Hugh, Francis and Patrick McCreary are alone entitled under the provisions of the will. The referee held, and the judgment entered upon his report declares, that the children of John and William are entitled to take, under the will, the interest that would have belonged to their fathers respectively had they been living at the death of the life tenant
We are of opinion that this conclusion of the learned referee is correct. By the provisions of the will, a life estate in the trust fund was vested in the widow of the testator, with remainder over to the two sisters named therein. The estate in remainder vested in the sisters respectively as an estate in presentí to come into possession upon the death of the life tenant. On the death of Mrs. McCreary, the estate so vested in her became vested in her surviving children and in the children of her deceased son William. The subsequent death of John McCreary carried his interest in the estate of his three children. We think the intention of the testator that the estate should so vest and take the direction thus indicated was manifest by the provisions of the will, and the construction given by the learned referee is upheld by authority. His construction, to use the language of Andrews, J. in Stevens v. Leslie (70 N. Y. 215), “ prevents the disinheritance of the issue of remainder-men who may happen to die before the termination of the precedent estate, a consequence which cannot be supposed, in the absence of express words, to have been intended by the testator.”
In the matter of the estate of Brown (29 Hun, 412), a similar question was presented and it was held that a vested remainder in the child of a daughter, enured *118 to the benefit of his child under the several authorities cited. The case was affirmed by the court of appeals (93 N. Y. 299) in which it was laid down as the rule, that where the language of the will is capable of any construction that will permit the issue of a deceased child to participate in the remainder limited upon his parent’s life, that construction should, on settled principles, be adopted in preference to one which would exclude them. And this is the principle established in Scott v. Guernsey (48 N. Y. 120); Low v. Hamony (72 N. Y. 408) and Hennessy v. Patterson (85 N. Y. 98). We see no reason to doubt that the referee has properly applied it in this case.
The other questions in this case arise upon the accounting. They relate to the refusal of the referee to charge the estate of Mrs. Wright with $5,000 of U. S. bonds which Oscar Spence, her co-executor and trustee under the will of William Dougherty, had appropriated to his own use and lost. By the will, Mrs. Dougherty and Oscar Spence, a nephew of the testator were made (to use the testator’s language) “ executors and trustees under this my last will and testament.” They both qualified and letters testamentary were issued to them. Shortly afterwards and before any trust or executorial acts had been performed the executrix and executor with their counsel and with the appraisers appointed by the Surrogate, met at the then late residence of the testator to make an inven-1 tory. For that purpose Mrs. Dougherty brought out from an inner room a box of securities which were then inventoried and appraised. After the inventory and appraisement were complete Oscar Spence, the executor, took possession of the box containing the securities and carried it from the house. The executrix did not afterward see them or have any custody of any part of them until January, 1872, when, Spence having failed in business, she called on him for the secur *119 ities and learned that some of them had been misappropriated by him. In a few days she succeeded in obtaining the box from Spence, and then ascertained that he had long previously sold the U. S. treasury notes and bond, and appropriated the proceeds to his own use, and had pledged 100 shares of Butchers’ & Drovers’ bankstock to one Andrews' for a loan of money amounting to $959. The referee found upon the evidence that Mrs. Dougherty was not, under the circumstances, chargeable as executrix or trustee, with the value of the lost treasury notes and bond. Our examination of the evidence in the case satisfies us that this conclusion was correct. Of those securities Mrs. Dougherty (afterwards Mrs. " Wright) never received the control or possession as executrix or trustee. They were, it seems, in fact, in the house of the testator at the time of his decease and were expressly excepted in the devise or bequest to her. The bare fact that the unopened box remained there until the time when it was brought forward and delivered to the appraisers for their action, is not enough to charge the widow, who rightfully possessed the house, with actual possession as executrix or trustee of the property contained in the box. Nor does the evidence justify the conclusion that she did anything in the nature of delivering the property to her co-executor Spence such as would charge her with responsibility for his subsequent acts. He took the same into his custody, doubtless in her presence, but in the exercise of his legal right, and the most that can be said upon the evidence is that she did not object or refuse to permit him to take such possession. So far therefore as those securities are concerned, we think the' referee disposed rightfully of the case.
The question in respect to the 100 shares of Butchers’ & Drovers’ bankstock is a little more embarrassing, The certificate of those shares was also in the *120 box and taken by Spence precisely as were the treasury notes and bond. But the case shows that he afterwards wrongfully pledged the certificate to one Andrews for loans of money amounting to $959. When Mrs. Dougherty (or Wright) discovered this fact, .Spence had become insolvent. The pledgee of the property refused to surrender it and claimed to be the holder of it in good faith on the advancement of the money loaned, and after some negotiation she seems to have been advised to the effect, that her rights were perhaps doubtful and at any rate could not be vindicated except by a lawsuit. She thereupon, for the purpose of securing the possession of the certificate, paid to Andrews the amount of the loan, to wit, $959 ; and her executor on this accounting brings in the certificate as an asset and claims to be allowed the sum which the executrix paid to redeem it. It appears that Spence transferred it to Andrews in his character as executor for he signs the transfer “Oscar Spence, Executor.” The stock all the while stood in the name of the testator Dougherty. There is not much donbt but that these facts were sufficient notice to Andrews of the true nature of the transaction, but it does not appear that he knew the money was not borrowed for the benefit of the estate. It was undoubtedly borrowed in fact, for the private use of Spence ; and it is a serious question whether it was not the duty of the executrix instead of redeeming the stock, to have prosecuted for its recovery. But this course would have been accompanied with very considerable expense and delay, and as the 100 shares of bankstock were of very much larger value than the amount for which they were pledged, it was probably a wise discretion to redeem, rather than to litigate. In view of all the facts we are not disposed to disturb the disposition made by the referee.
There are several questions arising in the course of *121 the trial upon exceptions to evidence. But as this was an equitable case, and we are able to see that it should have been disposed of without the objectionable evidence, precisely as it has been by the learned referee, we think it no violation of any equitable or legal principle to hold that the admission of such evidence, even if erroneous, should not have the effect to reverse the judgment. So far as relates to the statements made and documents executed by Spence, those may well be treated as part of the res gestee, inasmuch as they took place in the progress of the efforts to recover possession of the assets. It was the duty of the executrix to inquire into their disposition by him, and in the discharge of that duty his statements as to what had become of them and where, and how the possession of those not totally lost could be secured, should not be treated, we think, as mere hearsay evidence. What the-executrix said to her own counsel touching the same subjects was probably not properly admissible. But we cannot see that it could rightfully have affected the result to such an extent as to demand a new trial. If stricken wholly from the case, the result should be the same.
The judgment should be affirmed, with costs of the respective parties out of the fund.
Daniels and Beady, JJ., concurred.
Note.—In the foregoing case, it was not perhaps necessary to pass upon or even to point out a distinction which in another case might be material, namely, between taking under the will and taking as successors of one who'took under the will.
The will created a trust for the'widow’s life, and gave the principal to be divided on her death between testator’s sisters, and if either or both of the sisters should pre-decease the wife, the child or children of the one so dying to take the portion their mother would have taken had she survived the widow. And it was held, that on the death of a sister before the widow, leaving children surviving, followed by the death (also before the widow) of one of such children leaving children *122 surviving her and also surviving the widow, the latter children took the share their parent would have taken had they survived tÜe widow.
But the clause in the will is obscurely drawn, and it may serve a useful purpose to analyze the obscurities.
1. There is an absolute gift of a share of the principal to each sister, and a limitation over to her child1 or children in case she should die before the widow. This leaves it a question, what would have been the result if. a sister had died leaving no children surviving the testator.
It was clear, however, that children surviving the widow took under the will, not as next of kin of the sister, their mother. Further it is determined by this case that children of the deceased sister, surviving the testator and not surviving the widow, took also under the will, and not as next of kin of their mother.
The language of the opinion seems to favor the view that the intention of the testator was that grandchildren of a deceased child should take the interest the child would have taken. And in this view the grandchildren take as legatees under the will. The same result might be reached by holding that the estate of the child, vested in interest under the will, was not divested' or terminated by the death of that child, but passed to her children as her next of kin. In this view such grandchildren would not take as legatees of the testator, but as successors of a legatee. The importance of this distinction would appear if there were creditors of the deceased child of a sister, in which case her grandchildren’s portion could not ’be touched if the children took under the will, but might be if they took under the deceased child of their mother:—or if they were illegitimate children of a sister’s daughter, in which case they could not take, on the theory that they were legatees, but might, on the theory that they succeeded by statute to their mother’s interest;—or if the child of the deceased sister was indebted to the estate, in which case the executors could stop their share so far as necessary to pay their parent’s debt if they took as the successors under the statute, but could not if they took as legatees under- the will. Moreover, if they took as next of kin of their parent as above indicated, on the theory that he had a vested interest which would pass on his death to his next of kin, payment and distribution to them must be made through his executor or administrator; while if they took as legatees under the will, payment might be made direct to them by testator’s trustees.
- For recent cases illustrating this obscure but important distinction, see Leggett v. Leggett, 24 Hun, 333, 336; Tillman v. Sullivan, 63 How. Pr. 355.