BYRON J. SCOFIELD, AS RECEIVER, ETC., OF WILLIAM SPAULDING, RESPONDENT, v. WILLIAM SPAULDING AND PHILO B. SPAULDING, APPELLANTS.

*Fraudulent conveyance — declarations of the alleged fraudulent grantor, made before and after the conveyance, competent against him — his declarations made subsequent to the conveyance (even in the case of a conspiracy) not competent against his grantee.*

In an action brought to set aside a conveyance of real estate, which recited a consideration of $3,200, it appeared that the actual consideration given for the conveyance was a deed for a patent-right, which the referee found was of no value. He further found that the exchange was made "with intent to cheat and defraud, hinder and delay the creditors of William Spaulding (the grantor), and that it was with a like intent on the part of Philo B. Spaulding, the grantee."

The grantor remained in possession of the real estate, taking a lease thereof for a year from his grantee, at a rental of $125 a year; and at the expiration of one year Philo gave a lease to William's wife, and William and his family remained in possession down to the day of the trial.

On the trial the plaintiff was permitted to prove declarations of the grantor, some made before and some made after the conveyance.

*Held,* that the admissions or declarations of the grantor were competent evidence, as against himself, as he was a party defendant.

That, as evidence was given which tended to establish a conspiracy to defraud the creditors, entered into between the grantor and grantee, the admissions or declarations of the grantor made before the conveyance were competent evidence as against them both.

That evidence of the grantor's declarations, which were made subsequently to such conveyance, and also testimony given in proceedings supplementary to execution against him, subsequent to such conveyance, were incompetent as against the grantee.

That the judgment should be reversed.

APPEAL by the defendants from a judgment, entered against the defendants, upon the report of a referee, in the office of the clerk of the county of Otsego, on the 26th day of February, 1889, and from the whole and every part thereof.

This action was brought by the plaintiff to set aside a conveyance of a house and lot in Oneonta, also a vacant lot; which conveyance was executed by William Spaulding on the 3d day of January, 1885, and recorded on the 6th day of January, 1885, and recited a consideration of $3,200. The grantee Philo B. Spaulding, gave in exchange for the conveyance, a deed of a patent-right for shears or pruning hook, for the territory of thirty-one counties in the State of Pennsylvania.

The referee has found that the deed of the patent-right territory was of no value, and that the exchange was made "with intent to cheat and defraud, hinder and delay the creditors of William, and that it was with a like intent on the part of Philo B." At the time of the conveyance in question the house and lot was of the value of about $3,500, and the vacant lot of the value of about $250; and the grantor had goods in the store of the value of about $1,500; and he had accounts of the value of about $2,000, and he had a horse, wagon, harness and robes, etc., of the value of $200, making the total value of his property some $7,400. His indebtedness amunted to about $2,000. On the 28th of December, 1884, William transferred to his infant son, William H. Spaulding, his horse, wagon, harness, robes, whip, etc., assuming thereby to pay a debt to his son of $200. This transfer was in the presence and with the knowledge of Philo. When the conveyance of real estate was made, Philo had notice that William was in debt. On the 16th of January, 1885, William gave a chattel mortgage to his wife for the express consideration of $2,410, covering the store and goods and all his accounts, and on the 26th of January, 1885, William gave his wife another chattel mortgage upon a quantity of tobacco which he had received after the execution of the first chattel mortgage; making the second chattel mortgage collateral to the first one. William remained in possession of the real estate, taking a lease thereof for a year from Philo at a rental of $125 a year, and at the expiration of one year Philo gave a lease to William's wife, and William and his family remained in the possession of the house and lot down to the day of the trial. No evidence was given tending to establish the indebtedness of William to his son or to his wife, other than appears in the transfers made to them.

Evidence was given upon the trial tending to show a fraudulent intent on the part of William at the time of the execution of the conveyance, and that Philo had knowledge of William's indebtedness, and that William desired and intended to cover up all his property or put it beyond the reach of his creditors. Before this action was commenced the receiver offered to Philo a reconveyance of the territory covered by the assignment and demanded a conveyance of the real estate. Philo refused to receive the deed of the territory and refused to execute a conveyance of the real estate.

M. B. Williams was called as a witness for the plaintiff, and testified that he indorsed a note for William Spaulding April 1, 1884, and that he had a conversation with him at the time of that indorsement with reference to his property. He was then asked to state the conversation, which was objected to and the referee overruled the objection as to William Spaulding and sustained them as to Philo Spaulding. He stated the conversation, and he then added: " I had a conversation with him after that; after his failure; transfer of his property; it was after it came out that he had put his property out of his hands and before the sale of the goods in the store; it was about the last of January or first of February. Q. Tell us what occurred then? (Objected to by defendants' counsel as incompetent, improper and immaterial, and as no evidence against P. B. Spaulding. Objection overruled. Exception by defendants' counsel.) A. He said he had property enough to pay me ; I asked him where, and he did not say where; but he said he could pay me; but he was going to beat that damned Keyes; I asked him how he could beat Keyes when I was the banker. Says I: I have got to pay if you don't pay; well he said he had enough to pay me, and keep still I should have my pay ; I don't know whether I kept still or not; I presume I did not, I felt a little worked; I don't remember anything further there; I had or heard a conversation with him at the Ballard House in Cooperstown, I think, in May, 1887, when he was there at some court. Q. Tell us what that conversation was?" This question was objected to by the counsel for Philo Spaulding on the grounds before stated. The objections were overruled and the defendant took an exception. The witness answered, viz: " It is too damned bad you are here; you have no business here," says I, "I know it; pay your bills and I will go out; he says, I have got property enough to do it, but I ain't fixed just now so I can do it; he said Keyes drawed me into it; if I hadn't went into it with Keyes I wouldn't have went into it; I told him I didn't know whether Keyes drawed me into it or he did; I took it he drawed me into it; you compelled me to come; he said Keyes ought to be shot, he ain't fit to live; there ain't a Keyes on this side of hell fit to live; I asked him the reason why, and he did not give me the reason why he was not fit. Q. What did he say about the transfer of this property, or why he transferred it? A. He talked just as.

though he owned it; he asked me what I thought his property was worth; says I, it is worth what you appraise it at, $4,000; he said yes it is worth $4,500; that was about all there was in the conversation of the property business that I know. &ast; &ast; &ast; I think he said Barnes had no business to be there for he had paid him up and I think he said he had got about $1,500 or $2,000 after he paid him up out of the book accounts."

Three other witnesses testified to similar statements made by William Spaulding, some before and some after the transfer of the property conveyed had been made and the deed delivered and recorded, to which objections were taken by the defendant Philo Spaulding, which were overruled and exceptions taken.

William Spaulding had been examined in proceedings supplementary to execution before Charles L. Wilber, as referee. The plaintiff offered to read portions of the evidence thus taken and given by William Spaulding from the referee's report taken on the 16th of May, 1885. Specific objections were taken by the counsel for Philo B. Spaulding. The referee made the following ruling, viz.: " If the testimony covers declarations and transactions previous to the 1st of January, 1885, that I exclude so far as details which occurred after the time Philo Spaulding is shown to have any connection with it, that I will hear." The plaintiff then read the following testimony, viz.: " I have transferred my real estate to my brother Philo B. Spaulding; I transferred real estate first on the second of this last January to my brother." &ast; &ast; &ast; " Three thousand two hundred dollars was the consideration for which this deed was given. I did not get the money for this deed; I got territory on the Ainley patent shears ; I got a deed of some patent territory; this territory is in Pennsylvania; there was thirty-one counties embraced in this territory."

Evidence was given on the trial tending to show that the patent-right was worthless; some twelve years of its life had run ; while the evidence was contradictory in respect to the value of the invention, the finding of the referee that it was worthless is abundantly sustained by the evidence. William's wife did not execute the deed. It was admitted by the counsel for Philo " that he was in possession of the shears when the production of the same were demanded of him by plaintiff's counsel in order that he might have an opportunity

to cross-examine the witness in relation thereto. That the defendant's said counsel refused to produce the same as did also the defendant."

*S. M. Lindslay*, for the appellants.

*Melville Keyes*, and *James A. Lynes*, for the respondent.

HARDIN, P. J. :

Upon the evidence before the referee the question of whether or not the conveyance in question was made with intent to hinder, delay and defraud the creditors of William Spaulding, was one of fact. (*Peck* v. *Crouse*, 46 Barb., 151; 3 R. S. [7th ed.], 2329.)

We think the evidence fully warranted the referee in the finding, as a matter of fact, that the conveyance was made with the fraudulent intent on the part of the grantor, and received by the grantee with the like fraudulent intent. (*Starin* v. *Kelly*, 88 N. Y., 418.)

We are of the opinion that the admissions or declarations of William were competent evidence against him, as he was a party defendant. He remained in the possession of the property, and although it is said that it was under a lease, yet the position of the plaintiff in attacking the conveyance is that the lease is only a part of a fraudulent contrivance to keep the property beyond the reach of William's creditors.

After the evidence was given tending to establish a conspiracy to defraud the creditors entered into by William and Philo, the admissions or declarations of William were competent evidence as against him. (*Cuyler* v. *McCartney*, 40 N. Y. 228; *Loos* v. *Wilkinson*, 110 id., 195; *Waterbury* v. *Sturtevant*, 18 Wend., 359.)

When the admissions and declarations of William were offered they were competent evidence against him, and, therefore, the court could not exclude them. (*Wright* v. *Nostrand*, 94 N. Y., 31.) Before the evidence closed there was abundant testimony for the referee to find that there was a combination and conspiracy between the grantor and grantee to hinder, delay and defraud the creditors of the grantor. The conversation held in the presence of Philo, in the Windsor Hotel, detailed by the several witnesses, was sufficient to indicate the fraudulent purposes of the grantor and grantee, and to establish a scheme to hinder, delay and defraud the creditors of

the grantor. Philo was present at the conversation, according to the testimony of the witnesses, and made no statement or declaration contrary to the avowed purpose of William in making the " deal " with Philo by transferring his real estate in exchange for patent right; he is, therefore, presumed to have acquiesced in the statements. (Cowen & Hill [*n*] 191, 192.)

However, as the referee received in evidence declarations of William made after the deed, as well as testimony taken in proceedings supplementary to execution, against the objection of Philo, thus, in effect, holding they were competent evidence against Philo, we think an error was committed.

The opinion of MARTIN, J., considers this question *in extenso*, and the views expressed in his opinion must prevail. Therefore, we must reverse and order another trial.

MERWIN, J., concurred.

MARTIN, J.:

I fully concur in the opinion of Mr. Justice HARDIN that the evidence justified the referee in finding that the transfer in question was made with an intent, on the part of the grantor, to hinder, delay and defraud his creditors, and that the grantee was a participant in such fraudulent intent.

The more difficult questions to be solved in this case arise from the admission of certain evidence which was objected to and admitted under the appellant's exception. On the trial the respondent was permitted to prove the declarations of the grantor, made after the transfer in question was perfected and recorded, to the effect that the purpose of such transfer was to defraud the judgment-creditor represented by the plaintiff, and to prevent the collection of its debt. The referee also permitted the testimony given by the grantor in proceedings supplementary to execution to be read in evidence against the grantee. All this evidence was received under the objection of the grantee that it was incompetent as against him. It must be admitted that, as a general rule, the declarations of a grantor which form no part of the *res gestæ* are not competent to prejudice the title of his grantee, especially when made after the transfer. (*Cuyler* v. *McCartney*, 40 N. Y., 221; *Bullis* v. *Montgomery*, 50 id., 352; *Tilson* v. *Terwilliger*, 56 id., 273; *Burnham*

v. *Brennan,* 74 id. 597 ; *Tubor* v. *Van Tassell,* 86 id., 642 ; *Truax* v. *Slater,* Id., 630 ; *Coyne* v. *Weaver,* 84 id., 386 ; *Vidvard* v. *Powers,* 34 Hun, 221 ; *Burhans* v. *Kelly,* 17 N. Y. St. Rep., 552.)

It is, however, contended that an exception to this rule exists where the grantor remains in possession. The claim here is, that although the grantor had given a deed of the premises, which had been recorded, and taken a lease from his grantee, under which he claimed to hold possession, still, as the grantor was in possession, the case falls within the exception, and the evidence of the declarations of the grantor were admissible against his grantee.

In *Gibney* v. *Marchay* (34 N. Y., 301) it was held that the declarations of a party in possession of real property are admissible against the party making them, or his privies in blood and estate, but are not competent to attack or destroy a title which is of record. In *Vrooman* v. *King* (36 N. Y., 477), it was also held that declarations made by a grantor of premises after he had sold them, though he continue in the occupation up to the time of making such declarations, were not competent evidence as affecting the rights of his grantee. In *Hutchins* v. *Hutchins* (98 N. Y., 64) it was said : " It is only where the party making the declarations has, at the time of making them, the title to the property, that such declarations bind his successor in interest." In *McDuffie* v. *Clark* (39 Hun, 170) it is said : " The declarations of a party in possession are admissible in evidence against the party making them, or his privies in blood or estate, not to attack or destroy the title, for that is of record, and of a higher and stronger nature, and cannot be attacked by parol evidence. Such admissions are received in evidence simply to explain the character of the possession in a given case."

The doctrine of these cases seems adverse to the respondent's claim. Nor do I find anything which upholds it in the cases of *Adams* v. *Davidson* (10 N. Y., 309), or *Loos* v. *Wilkinson* (110 id., 195).

In the Adams case the validity of a general assignment for the benefit of creditors was involved. The declarations of the assignor before delivery of the property assigned, as to the purpose of the assignment, were admitted in evidence, and their admission was sustained. Although this case, if not overruled, has been quite

pointedly criticised in subsequent cases in the same court, still, if regarded as authority, it does not justify the rulings complained of in the case at bar. In the Adams case the transaction was incomplete when the declarations were made, as no delivery of the property assigned had taken place. In the case at bar the transaction was at an end. The deed had been given and recorded, and a lease of the premises taken by the grantor from his grantee. The whole transaction was not only complete, but it was valid and binding between the parties and as to all the world until set aside.

In the Loos case the conveyance was a secret one, and the declarations of the grantors were to the effect that they still owned the property. Such declarations were held competent on the ground that they were a part of the fraud, and it was there said: "They are in the nature of *res gestæ* declarations, and on the question of fraud clearly competent." In the case at bar the declarations proved were no part of the fraud, nor did they constitute any part of the *res gestæ*. They were, at most, mere declarations or admissions as to a past transaction. To constitute a part of the *res gestæ* the declarations must be made at the time the act was performed which they are to characterize. Here the act referred to had been performed and fully completed. The fraud, if any, had been fully consummated. It is said, however that the lease was a part of the fraudulent scheme, and hence the grantor's possession was not under the lease, but under his original title. The question of the validity of such lease was one of the questions being tried, and until determined, and the deed and lease were set aside, I am unable to see how the court could hold that the grantor was in possession under his original title. The question was as to the admissibility of evidence, and not as to the rights of the parties as they should finally be determined. The scheme, if fraudulent, was an executed one, and as between the parties their contracts were binding, and their claimed rights were their real rights. I cannot think that these declarations were any part of the *res gestæ*, nor that the possession of the grantor at that time, under the circumstances disclosed by the evidence, rendered the declarations of the grantor competent evidence against his grantee.

It is also said that the evidence was sufficient to justify the referee in finding that there was a conspiracy between the grantor and

grantee to defraud the creditors of the former, and, therefore, his declarations were admissible against the grantee. If it were conceded that such conspiracy existed, it would be difficult to perceive how it rendered the evidence of such declarations competent against the grantee.

Although when the connection of individuals in an unlawful enterprise is shown every act and declaration of each member of the confederacy in pursuance of the original plan, and with reference to the common purpose, is, in contemplation of law, the act and declaration of all, and is, therefore, evidence against each, still an act cannot be varied, qualified or explained by a declaration which amounts to no more than a mere narrative of a past transaction. Acts and declarations of conspirators are thus admissible only when made and done during the pendency of the unlawful enterprise, and in furtherance of its objects. If made or performed at a subsequent period, they are merely narrative, and not admissible. (1 Greenl. on Ev., § 111; Taylor on Ev. [text book series], §§ 589, 590, 593; N. Y. Guar. and Ind. Co. v. Gleason, 78 N. Y., 504, 515; People v. Gorham, 16 Hun, 93.)

As the evidence under consideration consisted of mere declarations in regard to a past transaction, and were not made in furtherance of any unlawful purpose, it was not, we think, rendered competent by the previous existence of such purpose, nor by any conspiracy that may have existed to accomplish that purpose.

I find nothing in the case of Wright v. Nostrand (94 N. Y., 31) to sustain these rulings. It was there held that where a judgment-debtor was called as a witness for the defendant, to give material evidence, his testimony in supplementary proceedings was admissible not only against him, but also against all the defendants for the purpose of affecting his credibility by showing conflicting statements. In this case William Spaulding, the grantor, was not called or sworn as a witness. There was no objection to the evidence in his behalf. The objection was specific, that it was incompetent against Philo B. Spaulding, the grantee. Under such an objection the evidence was received.

The evidence of the grantor's declarations made subsequent to such transfer, and his evidence given in proceedings supplementary to execution, was, I think, incompetent as against Philo B. Spaulding,

the grantee, and that the exceptions to its reception were well taken. For the error in admitting such evidence I think the judgment should be reversed.

Judgment reversed on the exceptions and a new trial ordered before another referee, with costs to abide the event.