SAMUEL S. EVANS, JR., who Sues in Behalf of Himself and All Other Judgment Creditors of EDWARD H. SIMS, Similarly Situated, who Shall Hereafter Join in This Action, Respondent, *v.* EDWARD H. SIMS and Others, Appellants.

*Sale of property by an insolvent debtor for long-time notes — when fraudulent as to his creditors — it does not per se establish fraud — error in receiving evidence in an equity action disregarded.*

An insolvent debtor, for the avowed purpose of securing certain of his creditors to a greater extent than was lawful under the provisions of chapter 503 of the Laws of 1887 (declining to make a general assignment), transferred all his property to assignees of insufficient responsibility, substantially on credit, and for all the purchase price thereof took the notes of the assignees on long time.

*Held,* that such sale might be found to have been made with an intent on the part of the vendor to hinder, delay and defraud his creditors;

That as the notes given in payment of the purchase price of such property were made payable in from one to four years, the necessary effect of such sale was to delay and defraud the creditors of the assignor.

The mere sale of property by an insolvent debtor upon credit to one having knowledge of his circumstances does not *per se* establish fraud.

In an equity action a new trial will not be granted for errors in the admission or exclusion of testimony, if the case has been rightly decided upon sufficient and competent evidence.

APPEAL by the defendants, Edward H. Sims and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Albany on the 28th day of November, 1893, upon the report of a referee, with notice of an intention to bring up for review upon such appeal the interlocutory judgment entered in said clerk's office on the 25th day of July, 1893.

*William W. Morrill,* for the appellants Sims and Young.

*Merritt & Ryan,* for Iler, assignee, appellant.

*Matthew Hale,* for the respondent.

PUTNAM, J. :

On the 1st day of August, 1891, the defendant Edward H. Sims was insolvent. He owned property consisting of goods, accounts and assets in his store in Troy, N. Y., of the value of over $70,000, and was indebted to an amount exceeding $123,000. Shortly before

the date above mentioned, being unable to meet his obligations, he had a consultation with his brother, Calvin B. Sims, his bookkeeper, Fred H. Young, and one McNutt, his attorney. At that interview a general assignment was suggested to said Edward, but he wished to prefer debts to the amount of $50,000 (over one-third of his property), which he could not do in an assignment, and, therefore, the following plan was adopted and carried out on the 1st day of August, 1891:

A partnership was formed between said Calvin B. Sims and Fred H. Young under the name of " Sims & Co." Edward, by a bill of sale, thereafter transferred his property to the said firm for the following consideration, viz.: An alleged debt of $17,874.51 due Calvin B. Sims; the assumption by the firm of Sims & Co. of debts which Edward wished to secure to the amount of $33,293.60, and the notes of said firm for $22,569.07, payable in twelve, eighteen, twenty-four, thirty, thirty-six, forty-two and forty-eight months.

The referee finds, on sufficient evidence, that Calvin B. Sims was of very little pecuniary responsibility, and Fred H. Young of none, at the time of the assignment. It was only claimed that Calvin was worth about $7,500, and, hence, he was of insufficient responsibility to meet the large claims assumed in the bill of sale.

Of the alleged debt of $17,874.51 due Calvin B. Sims, mentioned in the bill of sale, $10,000 was for a note made by Edward H. and indorsed by Calvin B., and which the latter had not paid. Hence, the referee could properly find on the evidence that Edward H. Sims, being hopelessly insolvent and unable to meet his obligations, and wishing to prefer creditors to a greater amount than could be done by a general assignment, made the bill of sale in question, wherein he transferred all his property to irresponsible parties for an alleged consideration of $74,737.18, of which $65,862.67 consisted of the unsecured obligations of such irresponsible assignees to pay the $10,000 bank note, the $33,293.60 of assumed claims and the $22,569.07 of notes, such notes, which were the only property of Edward remaining after the execution of the bill of sale, being payable in equal semi-annual installments running from one to four years.

After a careful reading of the voluminous testimony contained in the appeal book we are satisfied that it sustains the findings of the

referee, that "the said bill of sale by Edward H. Sims to said Calvin B. Sims and Fred H. Young furnished no protection or assurance, or guaranty of payment, to the creditors of said Edward H. Sims, or of the application of the proceeds of the property therein mentioned, to the payment or liquidation of their claims, * * * and it was executed and accepted with intent to hinder and delay the creditors of said Edward H. Sims, and with intent of dividing the property of said Edward H. Sims among his creditors in violation of chapter 503 of the Laws of 1887."

A statement of the facts of the case seems to be all that is necessary to be said. Such a sale, by which an insolvent debtor, for the avowed purpose of securing creditors to a greater extent than is lawful under the provisions of chapter 503 of the Laws of 1887 (declining to make a general assignment), transfers all his property to assignees of insufficient responsibility, substantially on credit, and for all the purchase price he is to receive takes the notes of the assignees on long time, the referee could properly find was made with an intent to hinder and defraud creditors. As all the property Edward H. Sims received in the transaction consisted of notes payable in from one to four years, the necessary effect of it was to delay and defraud creditors.

It has been held that the mere sale by an insolvent debtor upon credit to one having knowledge of his circumstances, does not *per se* establish fraud. (*Loeschigk* v. *Bridge*, 42 N. Y. 421.) In the case cited the vendee was a person of responsibility, fully able to meet his obligations for the purchase price of the goods he bought. Under such a state of facts, however, as was shown in this case, we have no doubt that the referee was justified in his above finding. It is difficult to see how he could have reached any other conclusion. (See *Hendricks* v. *Robinson*, 2 Johns. Ch. 287, 299, 300.)

In *Hendricks* v. *Robinson* (*supra*), at page 299, Chancellor KENT remarked: "The whole of this immense debt created by the sale of the real estate at its fair value was thus left to rest upon the personal promise of H. F. without any other security, real or personal.

"I cannot resist the impression that this sale carries on the very face of it strong indications of fraud, or, in the words of the statute, of a 'purpose and intent to delay, hinder or defraud creditors.'"

The above-quoted remarks of Chancellor KENT may be applied to this case. But here there was a sale on credit *to parties of insufficient responsibility* of all the property of the insolvent debtor. After the bill of sale, the only resource of creditors of Edward was in the notes and obligations of parties who, in said instruments, have become obligated to pay over $65,000, and, together, were at the time of its execution worth $7,500.

We are of the opinion that these facts, together with other circumstances shown on the trial indicating fraud, and which we will not attempt to discuss, justified the foregoing finding of the referee.

We also think the referee did not err in his conclusion that " the execution and delivery of said bill of sale and assignment and notes constituted and were parts of a single transaction, scheme or purpose for disposing of the property of said Edward H. Sims, and with intent thereby to hinder, delay and defraud his creditors, and to evade the provisions of chapter 503 of the Laws of 1887, and the defendant William F. Iler, at the time of the execution of the said assignment, had knowledge of such purpose and intent."

There was testimony given tending to show that the assignee, Iler, knew before the assignment that the bill of sale was in fraud of the rights of the creditors, and made with intent to hinder and defraud them. On the day of the execution of the bill of sale a circular was sent to the creditors of Edward H. Sims with a view of inducing a compromise. After the execution of the assignment Iler, the assignee, and Young were actively engaged in an effort on behalf of Edward to bring about a compromise with his creditors, and Sims & Co. paid their expenses, amounting to over $1,600. The referee finds that the assignee, Iler, after the assignment, commenced a collusive action against Edward H. Sims, Calvin B. Sims and Fred H. Young to set aside the bill of sale, but that the action was never proceeded with.

It appeared that the defendant Edward, after the execution of the assignment, left the State and remained outside of its limits so that his creditors could not serve process upon him. The evidence also tended to show that he afterwards voluntarily came within the State to allow the summons in the action commenced by Iler to set aside the bill of sale to be served on him, and that such action was

collusive, Had it been commenced in good faith by Iler he would have proceeded with it and would at once have applied for an injunction and receiver to protect the property attempted to be transferred by the bill of sale. On the contrary, Iler took no steps to preserve the property in question during the litigation and failed to prosecute the action. These were most significant facts, and tended to show, with other circumstances appearing in the case, that Edward, the members of the firm of " Sims & Co." and Iler were acting together to prevent creditors from attacking the bill of sale to bring about a compromise, and hence to show that the assignment was a supplement to and part of the scheme to hinder and defraud creditors which commenced with the execution of the bill of sale and ended with the said assignment.

It is urged in behalf of the appellants that an error was committed by the referee on the trial in overruling objections on the part of defendants to the reading of the deposition of Edward H. Sims taken on supplemental proceedings ; that this deposition was competent as against Edward H. Sims, but not against the other defendants, and the objections made on behalf of the latter should have been sustained. (*Scofield* v. *Spaulding*, 54 Hun, 523 ; *Petrie* v. *Williams*, 68 id. 589.)

Assuming that the referee erred in overruling the objection of appellants to the reading of the deposition and objections to other depositions which were read by the plaintiff, we think such assumption does not necessitate a reversal of the judgment. The same witnesses whose depositions were so read were afterwards examined on the trial, and substantially the same facts as those proved by the depositions were shown by the oral testimony of such witnesses.

It is well settled that " In an equity action a new trial will not be granted for errors in the admission or exclusion of testimony if the case has been rightly decided upon sufficient and competent evidence." (Code Civ. Proc. § 1003 ; *Marsh* v. *Pierce*, 21 Wkly. Dig. 51 ; *Wright* v. *Dugan*, 15 Abb. N. C. 107 ; *Baldwin* v. *Short et al.*, 125 N. Y. 553, 557, 558.) The findings of the referee were clearly sustained by competent oral testimony produced on the trial.

Other exceptions were taken by the appellants upon the trial which have been carefully considered. It will not be necessary to

discuss those exceptions, and we think that none of them require a reversal of the judgment.

The judgment should be affirmed, with costs.

MAYHAM, P. J., concurred ; HERRICK, J., not acting.

Judgment affirmed, with costs.